163 N.J. Super. 225 (1976)
394 A.2d 855
CLIFFORD A. FLANDERS, COMPLAINANT-RESPONDENT,
v.
WILLIAM PATERSON COLLEGE OF NEW JERSEY, RESPONDENT-APPELLANT.
MAY B. HOLLINSHEAD, COMPLAINANT-RESPONDENT,
v.
COLLEGE OF MEDICINE AND DENTISTRY OF NEW JERSEY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1975.
Decided March 25, 1976.
*227 Before Judges FRITZ, SEIDMAN and MILMED.
Miss Sherrie L. Gibble, Deputy Attorney General, argued the cause for respondent-appellant William Paterson College of New Jersey (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Ms. Mary Catherine Cuff, Deputy Attorney General, argued the cause for respondent-appellant College of Medicine and Dentistry of New Jersey (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Ms. Judith S. Musicant, Deputy Attorney General, argued the cause for respondent Division on Civil Rights (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Donald M. Altman, Assistant Attorney General, of counsel; Mr. Raymond A. Noble, Deputy Attorney General, of counsel and on the brief in the matter of May B. Hollinshead; Ms. Musicant, on the brief in the matter of Clifford A. Flanders).
The American Association of University Professors, N.J. Medical School-Dental School chapter (AAUP-CMDNJ); *228 the American Association of University Professors, New Jersey State Conference (AAUP-N.J.); the American Civil Liberties Union, New Jersey chapter (ACLU-N.J.); the New Jersey Women's Equity Action League (N.J. WEAL); the National Organization for Women of New Jersey (NOW-N.J.); and the Association for Women in Science, Inc. (AWIS) filed a brief amici curiae in the matter of May B. Hollinshead; Ms. Phoebe Seham, attorney.
The opinion of the court was delivered by MILMED, J.A.D.
These consolidated appeals involve claims of discrimination in violation of the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. In his complaint filed with the Division on Civil Rights (Division) in July 1972 Clifford A. Flanders, Ph.D., then 61 years old, alleged that he was not reappointed as Associate Professor of Chemistry and granted tenure at William Paterson College of New Jersey because of his "age." He had before then followed the in-college grievance procedure, but to no avail. In her complaint filed with the Division in October 1972 May B. Hollinshead, Ph.D., then an Associate Professor of Anatomy at the College of Medicine and Dentistry of New Jersey, charged that she was denied promotion to the rank of full professor of anatomy at the College because of her "sex." She had before then unsuccessfully pursued the in-college promotion procedure. She later amended the complaint to further charge that because of her sex she was being paid less as Associate Professor than some males at the College who were either lower in rank than she or who had less time in rank than she.
In each case the respective institution denied the charges. In Dr. Flanders' case the reason given for his nonretention for a fourth year, which would have given him tenure status, was that the Chemistry Department was "overstaffed." In Dr. Hollinshead's case the reason given for not promoting her to a full professorship was, essentially, that while she had earlier in her career made important academic contributions, *229 her productivity seemed to have "plateaued." Field investigation resulted in a finding in each case of probable cause to credit the charges of discrimination. In each case a testimonial hearing was conducted by a hearing examiner in the Division, following which he submitted his recommended findings of fact and conclusions of law.

As to Dr. Flanders
The hearing examiner, after analyzing the testimony in the case found, among other things; that Flanders' performance at the College "was of high calibre and was never substantially challenged throughout his employment there"; that "the Administration recognized his teaching ability and past contributions to the College"; that the Chemistry Department Retention Committee in a rare unanimous decision had recommended in October 1971 that Flanders "be offered a new contract for a fourth year of employment to commence in September, 1972 (which would automatically entitle him to tenure)" but that the Dean reversed that decision; that the Dean had "stated in the presence of several witnesses produced by the State that either Dr. Flanders (age 60) or Dr. Rivela (age 29) could not be renewed for over-staffing reasons and that it was more important to retain (and thereby tenure) Rivela because he was younger and would be able to produce more for the College in the future"; that although the College Appeals Committee reversed the Dean's decision, the College president subsequently reversed the Appeals Committee determination and Flanders "was ultimately unable to obtain tenure or a new contract for the 1972-1973 school year," and that "on the basis of the evidence and his observation of the demeanor and credibility of all of the witnesses * * * age was at very least a conscious factor in the administration's decision to deny retention and tenure to the complainant [Flanders]."
The hearing examiner concluded in his Recommended Findings of Fact and Conclusions of Law that the College *230 had practiced age discrimination in denying Dr. Flanders reappointment and recommended that Dr. Flanders be offered reinstatement (with its accompanying tenure) and receive back pay, less interim earnings, together with appropriate retirement plan contributions. The College filed exceptions to the hearing examiner's recommendations. The Director of the Division on Civil Rights concurred in the hearing examiner's recommendations, adopted them as his findings of fact and conclusions of law, and by order dated February 26, 1975 required the College, among other things, to offer Flanders reinstatement (with its accompanying tenure), to pay Flanders damages in the amount of $13,335 back pay, and to make appropriate contributions to Flanders' retirement plan.
On its appeal to this court William Paterson College contends that:
(1) There is a lack of substantial credible evidence to support the findings of the Division on Civil Rights that William Paterson College was motivated by discrimination in granting tenure to Rivela rather than the appellant.
(2) Evidence essential to the defense of this matter was erroneously excluded by the hearing officer and thus the College was denied a fair and impartial hearing.
(a) The hearing officer erroneously excluded evidence submitted by the College relevant to the relative qualifications of Flanders and Rivela.
(b) The hearing officer erred in denying the College the opportunity to discover information known to the Division on Civil Rights helpful to the defense of this matter.
We find no merit in the first of these contentions and no relevant force in any phase of the second. In support of its second contention the College argues that "evidence concerning the relative qualifications of Dr. Flanders and Dr. Rivela", should have been allowed; that summaries of student evaluations should have been admitted in evidence, and that it should have been permitted to question the Division's investigator regarding the persons with whom he had discussed the case in the course of his investigation *231 and the substance of their statements. The decision to exclude the "evidence" was in each instance within the discretion of the hearing examiner. N.J.S.A. 52:14B-10(a). We discern no mistaken exercise of that discretion. Beyond this, while the College now argues that "The decision not to grant tenure to Flanders was based on the judgment by the College that the chemistry department was overstaffed and that Dr. Rivela was a better candidate than Dr. Flanders," the sole official reason given by the College Dean to Flanders for the failure to reappoint him was that "there is no need for you because your department is overstaffed." Thus, the overriding issue at the hearing in the Division was whether Dr. Flanders was not reappointed because of "overstaffing" in the Chemistry Department or because of the practice of age discrimination. From our review of the record we have no doubt that age discrimination was the deciding factor. The proofs before the Division clearly establish an unlawful discrimination in violation of the statute (N.J.S.A. 10:5-12(a) and N.J.S.A. 10:5-4).
The Director's findings and conclusions are "supported by substantial credible evidence on the whole record, allowing for agency expertise and evaluation of the credibility of witnesses." Parkview Village Ass'n. v. Collingswood, 62 N.J. 21, 34 (1972). See also, Jackson v. Concord Co., 54 N.J. 113, 117-118 (1969). We discern no reason or justification for disturbing them. State v. Johnson, 42 N.J. 146, 162 (1964).

As to Dr. Hollinshead
The hearing examiner, after reviewing the evidence in the case, found, among other things, that "for nineteen years, Dr. May Hollinshead has been a highly regarded teacher and an active faculty member at the College of Medicine and Dentistry of New Jersey at Newark, and its predecessors"; that "there is no question as to the quality of Dr. Hollinshead's work being worthy of promotion to full *232 professor"; that there is "sex discrimination in the fact that in the nineteen year history of the respondent, there has never been a woman promoted to full professor, even though more than 10% of the faculty is female," and that "the complainant would probably have been promoted if she had been a male, and thus the denial of her promotion to full professor is the result of sex discrimination."
The hearing examiner recommended that the Director of the Division on Civil Rights find that the College "has engaged in unlawful discrimination against the complainant." He also recommended that the Director order the College to "cease and desist from such unlawful discrimination against Dr. Hollinshead and all other women employees," and that Dr. Hollinshead "be awarded a total of $4,251 ($3,751 for back pay and $500 for humiliation damages), with interest of 6% to run from July 1, 1972." He declined to recommend that the Director order the College to promote Dr. Hollinshead to full professor. Instead, he recommended "that the Director order Dr. Hollinshead's credentials be resubmitted to the Faculty Committee on Appointments and Promotions for a fair and nondiscriminatory review." Both the College and Dr. Hollinshead filed exceptions to the hearing examiner's report.
The Director of the Division on Civil Rights concurred in and adopted the hearing examiner's findings of fact and conclusions of law excepting only the recommended remedy since it failed to include immediate appointment of Dr. Hollinshead to full professor. He found that the College "has engaged in a pattern and practice of sex discrimination against its female faculty members and such unlawful practice constitutes a violation of N.J.S.A. 10:5-4 & 12(a)," and by order dated March 11, 1975 required, among other things, that the College forthwith promote Dr. Hollinshead to the rank of full professor, retroactive to July 1, 1972, and pay her the sum of $4,704.33, consisting of $3,751 for back pay, $500 for humiliation damages and $453.33 for interest from July 1, 1972 through June 30, 1975. The College was *233 also required, among other things, to engage "in the Affirmative recruitment, hiring, and promotion of qualified women"; to direct "all appropriate individuals and/or committees to consider for faculty promotions any and all qualified women before giving consideration to any and all men who have substantially similar qualifications"; to give, within ten days after a promotion is granted written notice of the reasons for her rejection to each woman not selected when the "promotion, other than one in rank is granted to a man for which women were qualified or applied"; to give written notice of the reasons (with particularity) for any denial of promotion in rank to a woman faculty member whenever she is reviewed for such promotion and it is denied, and to "establish and maintain policies which will insure salary equity between comparable male and female faculty members in the future."
On its appeal to this court the College of Medicine and Dentistry of New Jersey contends that
(1) There is a lack of sufficient credible evidence to establish that failure to promote Dr. Hollinshead to the title of full professor at the College of Medicine and Dentistry of New Jersey was motivated by sex discrimination.
(2) The portion of the order of the Director of the Division on Civil Rights mandating preferential treatment for women faculty exceeds the powers of the Division and should be declared void.
(3) The order of promotion to full professor without reference to the nature of the employment sought and without regard to established criteria and professional evaluations constitutes an inappropriate use of the Director's power.
From our review of the record in this case we are satisfied that each of the issues raised by the College is clearly without merit. Here, as in the Flanders matter, there is substantial credible evidence in the record to support the findings and conclusions of the Division Director. We perceive no sound basis for disturbing them. Jackson v. Concord and State v. Johnson, both supra. An unlawful sex discrimination in violation of N.J.S.A. 10:5-12(a) and *234 N.J.S.A. 10:5-4 was clearly established by the proofs before the Division. Amply supported by the evidence, the Director found that Dr. Hollinshead was denied a promotion to full professor solely because of her sex. This being so, his order that the College forthwith promote her to the rank of full professor, retroactive to July 1, 1972, was in the circumstances an entirely reasonable exercise of authority granted to him by N.J.S.A. 10:5-17 to require the respondent (College) to take affirmative action including the "upgrading of employees." The hearing examiner, in his "conclusions of law," observed in part that
The record contains almost no derogatory information about her [Dr. Hollinshead]. Moreover, witnesses for the respondent [College] admitted that males with less qualifications had been promoted in the past. In addition, at the exact same time that Dr. Hollinshead was being denied promotion, a male from the same department was promoted to full professor even though there is testimony that this male professor and Dr. Hollinshead were considered "on a par".

* * * * * * * *
Respondent did deny promotion to Hollinshead while promoting males of inferior and equal qualifications.
These findings and conclusions of sex discrimination which could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, support the Director's action in ordering the "forthwith" promotion.
The affirmative action provisions of the Director's order of March 11, 1975 are entirely consonant with the legislative policy expressed in N.J.S.A. 10:5-17:
* * * it is patently clear that the Legislature intended to create an effective enforcement agency in order to eradicate the cancer of discrimination.
[Jackson v. Concord Co., supra, 54 N.J. at 124]
We find no legal infirmity in any of those provisions of the Director's order so long as the provision therein requiring *235 consideration for faculty promotions to be given first to women is not intended to prefer women above men or to subordinate the promotion of qualified men to women in a manner of reverse discrimination. If this directive is merely intended to insure women consideration of their applications, as the Attorney General appears here to argue, then we do not find it susceptible to a reverse discrimination charge. And see Passaic Daily News v. Blair, 63 N.J. 474 (1973), wherein the Supreme Court pointed out:
This court has heretofore adopted a broadly sympathetic construction of the Law Against Discrimination and has interpreted the provisions thereof pertaining to the remedial powers of the Division on Civil Rights and the Director thereof with that high degree of liberality which comports with the preeminent social significance of its purposes and objects. [at 484]
In each of the matters herein, the final decision and order under review is affirmed.