180 N.J. Super. 68 (1981)
433 A.2d 813
PATROLMEN'S BENEVOLENT ASSOCIATION, LOCAL 145 AND LISA CIMINO, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF EAST BRUNSWICK, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 9, 1981.
Decided July 23, 1981.
*70 Before Judges MATTHEWS, MORTON I. GREENBERG and LOFTUS.
Alan D. Goddard, attorney for appellants.
Busch and Busch, attorneys for defendants (Bertram E. Busch of counsel and on the brief).
The opinion of the court was delivered by LOFTUS, J.S.C. (temporarily assigned).
This is an appeal from the decision of the trial court granting the motion of defendant Township of East Brunswick (township) to dismiss the complaint at the end of plaintiffs' case for failure to state a cause of action. Plaintiff Patrolmen's Benevolent Association-Local 145 (PBA) and plaintiff Lisa Cimino brought suit against the township alleging that it had engaged in discriminatory practices with regard to the testing procedures for the position of police officer in the year 1980. Plaintiff PBA alleged that it had been the subject of reverse discrimination. Plaintiff Lisa Cimino alleged that she had been personally discriminated against.
After a hearing at which various witnesses testified and during which documentary evidence was introduced, the trial judge rendered a decision on August 19, 1980 in which he concluded that neither plaintiff had established a cause of action. He specifically found that there was no reverse discrimination as to the PBA and no discrimination as to Lisa Cimino. *71 Therefore, he entered judgment in favor of defendants and against plaintiffs.
On appeal our scope of review is directed to determining whether the evidence before the trial court together with the legitimate inferences that could be drawn therefrom in the light most favorable to plaintiffs could have sustained a judgment in plaintiffs' favor. R. 4:37-2(b); Dolson v. Anastasia, 55 N.J. 2, 5 (1969).
The issue presented on appeal arises out of the hiring practices in the Division of Police, Department of Public Safety, of the Township of East Brunswick. Since 1973 the township had been named as a defendant in a complaint filed by the New Jersey Division of Civil Rights. This complaint alleged that the township failed to have an appropriate number of female police officers. In an attempt to eliminate the discriminatory practices alleged in the complaint the township embarked upon recruitment procedures for the hiring of qualified female police officers. Efforts to recruit policewomen in 1978 and 1979, including the enactment of an Equal Employment Opportunity and Affirmative Action Program, failed to produce any female recruits.
During the years prior to 1980 the testing procedures of the township required that applicants obtain a score of 70 on the written test and a score of 70 on the physical agility test  thereby making a minimum combined score of 140. In 1980 the township sought to establish a larger eligibility pool of male and female police officers. Under the 1980 testing procedure an applicant was required to receive a score of at least 70 on the written test before he or she could proceed to the physical agility test. If the applicant received a score of at least 70 on the written test, the passing combined score for the written and physical agility test had to be 120. Therefore, the township reduced the minimum passing score on the physical agility test from 70 to 50 in 1980. After the test two lists were compiled  one consisting of males who had passed and one consisting of *72 females who had passed. The municipality then sought to appoint from both lists.
We first address the issue of whether the township engaged in discriminatory practices toward plaintiff Lisa Cimino, a female applicant, who received 69.2 on the written test and therefore was not permitted to proceed to take the physical agility test. The township has the right to require that candidates attain a satisfactory grade on one or more parts of the examination in order to proceed to the next part. East Brunswick Municipal Ordinance, Original Appointments of Vacancies, §§ 28:4A(2) and 28:4H(2). At trial Lisa Cimino failed to meet her burden of proving by a preponderance of the credible evidence that the testing procedure employed by the township on the written part of the examination was discriminatory. Therefore, the decision of the trial judge in granting the motion to dismiss at the end of her case was clearly proper and is hereby affirmed.
We next address the question of whether or not the PBA met its burden of proving that the hiring procedures resulted in reverse discrimination.
First, there are serious questions as to whether or not plaintiff association has standing to bring this action. The New Jersey test for standing is "whether plaintiffs have a sufficient stake in the outcome of the proceedings and whether their position is truly adverse to that of defendants." Urban League of New Brunswick v. Carteret, 170 N.J. Super. 461, 467 (App.Div. 1979); Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107 (1971). Plaintiffs must demonstrate that an unfavorable decision will cause them injury and that the relation of plaintiffs to the action is greater than that of stranger or casual interloper. N.J. Chamber of Commerce v. N.J. Election Law Enforc. Comm'n, 82 N.J. 57, 67-68 (1980). Our Supreme Court in that case stated:

*73 In addition to these considerations governing standing to sue, a plaintiff's particular interest in the litigation in certain circumstances need not be the sole determinant. That interest may be accorded proportionately less significance where it coincides with a strong public interest ... Thus even were plaintiffs able to show only slight or indirect injury to themselves, the harm to others has been demonstrated and ... the ability to assert rights on behalf of others is recognized as a salutary exception to conventional requirements of standing. [at 68-69; emphasis supplied]
Plaintiff PBA has claimed standing based on the foregoing public interest argument, but in fact has done no more than assert an unsupported position that the safety of existing police officers would be jeopardized by the inability of appointees under the 1980 testing procedures to provide minimal support in emergency situations. There was no proof as to how any of the PBA members would suffer injury.
However, assuming arguendo that the PBA has standing to bring this action by applying a most liberal interpretation of N.J. Chamber of Commerce v. N.J. Election Law Enforc. Commn, supra, we address ourselves to the substantive issue. Under East Brunswick Ordinance, Original Appointments of Vacancies, §§ 28-4A(2), 28-4D(1) and (2), 28-4F and 28-H(2), the township was authorized to give competitive examinations as determined by the administrator after consultation with the department head. The township did in fact give competitive examinations for the position of police officer and set a standard qualifying score for both the written and the physical agility test. The fact that the qualifying score for the physical agility test in 1980 was less than the years before does not mean that the test did not produce qualified candidates. In fact, the Township Administrator and the Director of Law and Public Safety testified that the lowering of the score on the physical agility part of the test did not result in unqualified candidates. Both stated that all persons scoring 120 or above were qualified to perform the duties of the position of police officer in the township.
*74 The lowering of the physical agility passing grade applied to all candidates. Although the result was an intended increase in the number of eligible female candidates they were not favored to the exclusion of males. See Flanders v. William Paterson College, 163 N.J. Super. 225, 234-235 (App.Div. 1976). All candidates who scored 120 or above were qualified according to the standards set by the township. Therefore, the record does not support the allegation of the PBA that the reduced score on the physical agility part of the test would lead to incompetent police officers or injury to the public safety.
Additionally, the establishment of two separate lists for qualified male and female candidates did not constitute an unlawful or discriminatory practice contrary to N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12(a). This is not the use of a quota system to remedy past discrimination, nor is it sexual classification irrespective of qualification. See Lige v. Montclair Tp., 72 N.J. 5, 23 (1976).
The testing procedures established by the township in 1980 as a result of the complaint filed by the Division of Civil Rights achieved an important governmental objective  the establishment of a larger pool of qualified, eligible male and female candidates for appointment to the position of police officer in the township. Tomarchio v. Greenwich Tp., 75 N.J. 62, 69 (1977).
Plaintiff PBA failed to meet its burden of proving by a preponderance of the credible evidence that the foregoing testing procedures of the township in 1980 constituted unlawful or invidious employment discrimination. Peper v. Princeton Univ. Trustee Bd., 77 N.J. 55, 80 (1978). Therefore, the trial judge acted properly in dismissing the complaint at the end of PBA's case.
For the foregoing reasons the decision of the trial court is affirmed.