Reversed and remanded for further proceedings consistent with this opinion.

814 A.2d 665

EDWARD O'LONE, PLAINTIFF–APPELLANT, v. DEPARTMENT OF HUMAN SERVICES, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 1, 2002—Decided January 28, 2003.

Before Judges SKILLMAN, LEFELT and WINKELSTEIN.

*Mario A. Iavicoli,* argued the cause for appellant.

*Robert H. Stoloff,* Deputy Attorney General, argued the cause for respondent (*David Samson,* Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Mr. Stoloff,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether the Merit System Board (Board) may deny a back pay claim by a career service employee whose removal from his position was reduced to a suspension, based solely on the employee's failure to seek substitute employment during the period of separation from public service, without considering the availability of such employment.

We conclude that under its current rules the Board may not deny a claim for back pay for the period following a suspension solely on the ground that the employee failed to seek substitute employment. Instead, the Board must determine whether there was suitable substitute employment the employee could have been obtained had he or she made a diligent search. If the Board makes this finding, the back pay award should be reduced by the amount the employee could have earned in that employment.

In 1994, appellant Edward O'Lone held the position of Section Chief, Health Care Facilities, at Ancora Psychiatric Hospital, for which he received a salary of $61,736.46 per year. On September 1, 1994, appellant was charged with physically abusing a co-employee; threatening and intimidating a co-employee on State property; and conduct unbecoming a public employee. These charges were based on an incident in which appellant grabbed a co-employee's throat and pushed him from a hallway into an office.

Following a departmental hearing, the Department of Human Services (Department) removed appellant from his position. Appellant appealed to the Board, which referred the matter to the Office of Administrative Law (OAL) for an evidentiary hearing. An Administrative Law Judge (ALJ) issued a recommended initial decision upholding the charges and appellant's removal from his position, and the Board adopted this decision.

On appeal, we affirmed the Board's decision upholding the charges against appellant in an unreported opinion. *O'Lone v. Merit Sys. Bd.*, No. A–2024–95, 1997 WL 356477 (App.Div. March 31, 1997). However, we concluded that the ALJ's findings of fact and conclusions of law, which the Board adopted, did not set forth adequate reasons for the penalty of removal. We also noted "our strong sense that the penalty of dismissal is unwarranted on the record before us[.]" (slip op. at 4, 1997 WL 356477). Accordingly, we remanded the case for reconsideration of the penalty.

On remand, the Board concluded that appellant's removal had been too harsh and reduced this penalty to a six-month suspension. However, on further review, we concluded in another unre-

ported opinion that "the penalty imposed on [appellant] exceeds what is just given his unblemished 22 year record; the support of his supervisors; the antipathy between him and [the victim of the assault]; and the fact that [the victim] was not injured in the scuffle." *O'Lone v. Merit Sys. Bd.*, A–2024–95 (App.Div. Dec. 19, 1997) (slip op. at 3). We also concluded that appellant's six-month suspension was "out of line with the penalties imposed by the Board in commensurate cases." *Ibid.* Accordingly, we reversed the six-month suspension and, in the exercise of our original jurisdiction, reduced the penalty to a three-month suspension.

Following our second decision, the Department reinstated appellant on October 20, 1999. However, the Department denied appellant's claim for back pay for the three-year period between his removal and reinstatement, less the three-month period of suspension, which totaled $178,520.58. Consequently, appellant submitted his back pay claim to the Board, which again referred the matter to the OAL.

Following a four-day hearing, the ALJ concluded that appellant was not entitled to any back pay because he "made no serious effort to find substitute employment" during the period of his separation from State service. The ALJ based this conclusion on factual findings that:

> O'Lone did not apply for a single job. He did not send out a single resume. He did not register with any employment agency. He did not attend any job fairs. He did not prepare a resume. His efforts to find work was to review classified ads and review job positions on the Internet and to talk to a few friends.

Although the ALJ concluded that appellant's failure to make any serious effort to find new employment provided a sufficient basis, by itself, to deny his back pay claim, he also concluded that there was "suitable substitute employment" available to appellant. In rejecting appellant's claim that he would have been obligated to disclose to any prospective employer that he had been terminated for assaulting a co-employee and that he was pursuing a claim for reinstatement, the ALJ stated:

> Common experience and common sense dictate that job interviewers will vary in the thoroughness with which they explore an applicant's background. O'Lone

would not necessarily have had to lie during an interview. He could have answered all questions put to him honestly and, depending on what the interviewer asked, have revealed his peculiar circumstance or not. O'Lone could have presented himself in ways that would ameliorate the impact of the reasons for his termination. The considerations that O'Lone says make him unemployable are hardly unique among discharged State employees seeking reinstatement. Every employee in that situation must explain the reasons for his termination. Every employee in that situation is seeking reinstatement. If those considerations were enough to obtain full back pay, with no mitigation, the doctrine would become irrelevant in the Merit System area.

The Board adopted the part of the ALJ's recommended decision which concluded that appellant's back pay claim should be denied commencing on the effective date of his termination, September 8, 1994, because he "made no attempt ... to obtain other employment." Based on this rationale, the Board did not reach the question whether any "suitable substitute employment" would have been available. However, the Board concluded that appellant was entitled to back pay commencing on April 30, 1997, which was the day after the Board determined, following the remand, that the appropriate sanction for his disciplinary infraction was a six-month suspension, because he had already been separated from employment for more than six months when this decision was issued and all parties were aware that further review by this court could only result in a lesser penalty.

On appeal, appellant argues that the Board erred in finding that he made no effort to obtain substitute employment during the period of his separation from State service. In the alternative, appellant argues that the Board erred in concluding that the failure to seek substitute employment was a sufficient basis for denial of his back pay claim, without any showing that suitable substitute employment was available.

We are satisfied that there is sufficient credible evidence in the administrative record to support the Board's finding that appellant made no serious effort to obtain substitute employment during his separation from State service. *See Jackson v. Concord Co.*, 54 *N.J.* 113, 117–18, 253 *A.2d* 793 (1969). However, we conclude that appellant's failure to seek substitute employment

was not a sufficient basis for the denial of his back pay claim, without any consideration of the availability of such employment. Therefore, the case must be remanded to the Board to determine what employment would have been available to appellant if he had made a diligent search and to award him back pay reduced by whatever amount he could have earned in such employment.

*N.J.S.A.* 11A:2–20 provides in pertinent part:

Except as provided for in N.J.S.[A.] 11A:2–13,[1] an appointing authority may not impose a suspension or fine greater than six months.

In *Steinel v. City of Jersey City,* 99 *N.J.* 1, 489 *A.*2d 1145 (1985), *aff'g o.b.,* 193 *N.J.Super.* 629, 475 *A.*2d 640 (App.Div.1984), the Court construed a predecessor to *N.J.S.A.* 11A:2–20 to preclude the denial of more than six-month's back pay to a suspended employee. The Court applied this holding in circumstances similar to this case, where the predecessor to the Board reduced a penalty of removal to a six-month suspension. Most notably, the Court expressly recognized that an appointing authority's obligation to award back pay where a disciplinary penalty is reduced from removal to a suspension is "subject to reduction and mitigation from income which could have been earned" after the suspension period. *Steinel, supra,* 99 *N.J.* at 2, 489 *A.*2d 1145 (quoting 193 *N.J.Super.* at 637, 475 *A.*2d 640).

After *Steinel,* the Legislature enacted *N.J.S.A.* 11A:2–22, which provides:

The board may award back pay benefits, seniority and reasonable attorneys fees to an employee *as provided by rule.*

[Emphasis added.]

Pursuant to this delegation of authority, the Board adopted *N.J.A.C.* 4A:2–2.10(d)(3), which states in pertinent part:

The award of back pay shall be reduced by the amount of money which was actually earned or could have been earned during the separation.[2]

---

[1] *N.J.S.A.* 11A:2–13 provides that a suspension based on certain criminal charges may "continue until a disposition of the charge." Appellant's suspension was not predicated on the charges filed against him in municipal court.

[2] *N.J.A.C.* 4A:2–2.10(d)(3) also provides:

This rule does not address the employee's and appointing authority's evidentiary burdens where the appointing authority claims that a back pay award should be denied or reduced due to the employee's failure to seek substitute employment.

Appellant argues that the Board is required in a case such as this to apply the same evidentiary rules that govern a back pay claim under the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49. Appellant relies upon the Court's statement of those rules in *Goodman v. London Metals Exch., Inc.,* 86 *N.J.* 19, 429 *A.*2d 341 (1981)—specifically, that the employer has the burden of proving that the employee failed to mitigate damages by seeking substitute employment, *id.* at 40, 429 *A.*2d 341, that to satisfy this burden, the employer must "first show[ ] that comparable employment opportunities were available" to the employee, *id.* at 41, 429 *A.*2d 341, and that it is only after the employer has made this threshold showing that the burden "shift[s] to the employee . . . [to] introduce evidence that comparable employment did not exist, that reasonable and diligent efforts on his part had not been successful, or that the circumstances did not justify acceptance of a dissimilar job." *Ibid.* Moreover, "[t]he ultimate burden of persuasion rests on the employer." *Ibid.* Under this evidentiary framework: "Whether the individual sought a job or not would be irrelevant in the absence of a position." *Ibid.* Appellant also relies on the statement in *Goodman* that the "lowered sights" doctrine, under which an employee who is unable to obtain comparable substitute employment must "accept employment with lower pay, with different work, or at a more distant

---

If an employee also held other employment at the time of the adverse action, the earnings from such other employment shall not be deducted from the back pay. However, if the employee increased his or her work hours at the other employment during the back pay period, earnings from such additional hours shall be subtracted from the back pay award.

Although appellant also was employed part time as a courier at the time of his removal, the Department did not present any evidence that his work hours in that employment increased during the period of his separation from State service.

location[,]" *id.* at 38, 429 *A.*2d 341, should be "applied with caution." *Id.* at 40, 429 *A.*2d 341.

In *Goodman,* the Court noted that "[t]he basic purpose of awarding back pay [in a LAD case] is to make the discriminatee whole by reimbursement of the economic loss suffered, though it also should correlatively discourage and deter discrimination." *Id.* at 34–35, 429 *A.*2d 341. Consequently, a trier of fact must weigh "the policy of promoting production and employment" against "the counter policy of righting the wrong attributable to an unlawful discrimination." *Id.* at 40, 429 *A.*2d 341.

■ A back pay award to appellant would not vindicate any comparable public policy. Unlike a victim of unlawful discrimination, appellant was responsible for his own plight. The disciplinary proceeding that resulted in his removal, which was subsequently reduced to a three-month suspension, was based on appellant's assault upon a co-employee, not on any wrongdoing attributable to the Department. Furthermore, there is no basis for concluding that the Department acted in bad faith in removing appellant from his position. In fact, two impartial tribunals—the ALJ and the Board—initially concluded that removal was the appropriate penalty for appellant's misconduct in the performance of his public duties. Under these circumstances, the Board was not required to impose the same heavy burden upon the Department to prove a failure-to-mitigate defense as in a LAD case.

■ However, this does not mean that the Board properly denied appellant's back pay claim solely on the ground that he failed to make any serious efforts to obtain substitute employment, without considering whether such employment would have been available. Our law generally does not impose an obligation upon a party to perform a futile act. *See Yager v. Am. Life Ins. Ass'n,* 44 *N.J.Super.* 575, 581–82, 131 *A.*2d 312 (App.Div.1957). Moreover, the Court in *Goodman* held that "[i]n order to invoke mitigation there must, of course, be available jobs." 86 *N.J.* at 36, 429 *A.*2d 341. Although we have concluded that the Department's failure-

to-mitigate defense is not subject to the same evidentiary rules as a back pay claim under the LAD, the Court's conclusion in *Goodman* that the availability of substitute employment is relevant to establishment of this defense is also applicable in the present context.

In arguing that the Board's finding that appellant failed to make any serious effort to obtain substitute employment is sufficient, by itself, to support the denial of his back pay claim, the Department relies upon a series of recent Board decisions that have denied back pay claims solely on the basis of an employee's failure to seek substitute employment. *See, e.g., In re Coppola*, Merit System Bd. (March 9, 1999); *In re Falkowski*, Merit System Bd. (Jan. 13, 2000); *In re Wasi*, Merit System Bd. (July 12, 2000). However, *N.J.S.A.* 11A:2–22 requires the Board to provide for the award of back pay "by rule." Consequently, the Board may not exercise this discretionary authority "by adjudication." *DelRossi v. Dep't of Human Servs.*, 256 *N.J.Super.* 286, 292, 606 *A.*2d 1128 (App.Div.1992).

Moreover, the Board's current rules governing back pay imply that the availability of substitute employment is relevant to a failure-to-mitigate defense. *N.J.A.C.* 4A:2–2.10(d)(3) provides that a back pay award shall be reduced by the amount an employee earned or "could have earned" during the period of separation from public service. If a finding that an employee failed to seek substitute employment during the period of separation from public service was sufficient, by itself, to require a complete denial of a back pay claim, it is difficult to conceive of any circumstance in which it would be appropriate for the Board to reduce a back pay award by the amount an employee "could have earned" during the period of separation. Therefore, the Board's recent decisions that have denied back pay claims solely on the basis of an employee's failure to seek substitute employment appear not only to adopt a rule of general application through adjudication rather than rule-making under the Administrative Procedure Act, *N.J.S.A.* 52:14B–

4 to –7, contrary to *N.J.S.A.* 11A:2–22, but also to be inconsistent with the current rule set forth in *N.J.A.C.* 4A:2–2.10(d)(3).[3]

In the absence of an administrative rule that sets forth the employee's and the appointing authority's evidentiary burdens in a case where an appointing authority claims that a back pay award should be denied or reduced due to the employee's failure to seek substitute employment, we conclude, in conformity with the general rule governing the failure-to-mitigate defense, that the appointing authority should bear the initial burden of presenting evidence of the employee's failure-to-mitigate. *See Goodman, supra,* 86 *N.J.* at 40, 429 *A.*2d 341. However, because the reason for the employee's separation from service in this kind of case is the employee's own misconduct rather than the appointing authority's wrongful act, we conclude that the appointing authority may discharge its initial burden by presenting evidence that the employee failed to seek any substitute employment or, alternatively, that suitable substitute employment was available that the employee did not obtain. If the employer makes either of these showings, the burden then shifts to the employee to present evidence that suitable substitute employment was unavailable or that the employee was unable to obtain such employment despite diligent efforts. Based on this evidence, the Board must then determine whether there was suitable substitute employment the employee could have obtained had he or she made a diligent search. If the Board makes this finding, the back pay award should be reduced by the amount the employee could have earned in that employment. *See Booker v. Taylor Milk Co.,* 64 *F.*3d 860, 866–67 (3d Cir.1995); *Power v. United States,* 220 *Ct.Cl.* 157, 597 *F.*2d 258, 265 (1979).

---

[3] We express no opinion as to whether a rule that required denial of a back pay claim solely on the basis of an employee's failure to seek substitute employment would constitute a valid exercise of the Board's rule-making authority under *N.J.S.A.* 11A:2–22.

■ We also conclude that it is appropriate to apply the "lowered sights" doctrine more expansively in a case such as this than in a case where a termination of employment is found to have violated the LAD or other law. In this case, appellant bears the responsibility for the negative mark on his employment record resulting from the assault he committed on a co-employee. Moreover, appellant is the one who decided to return to State service if his appeal resulted in reinstatement. Consequently, if comparable employment was unavailable to appellant during the period of his separation from State service, as he claims, this appears to have been due primarily to his own actions and decisions. Under these circumstances, it would be inequitable to require the State to pay appellant full back pay even though he could have obtained substitute employment at a lower level of responsibility and compensation during the period of his separation from State service. Cf. Goodman, supra, 86 N.J. at 40, 429 A.2d 341 (noting that the applicability of the "lowered sights" doctrine turns in part on "the circumstances peculiar to the individual involved.") Instead, appellant's back pay award should be reduced by the amount he "could have earned" in such substitute employment. N.J.A.C. 4A:2–2.10(d)(3).

Since the Board denied appellant's back pay claim solely on the ground that he did not attempt to obtain substitute employment, without considering the availability of such employment, the case must be remanded to the Board to make findings of fact concerning the availability of suitable substitute employment and to reconsider its decision in light of the principles set forth in this opinion. If appropriate, the Board may order supplementation of the record.

For the Board's guidance on the remand, it is appropriate to discuss several other issues. First, we agree substantially for the reasons expressed in the ALJ's recommended decision that appellant's part-time job as a courier should not have stood in the way of him seeking substitute employment for his position at Ancora and that the Board may therefore disregard that job in determin-

ing the employment that would have been available to appellant if he had made a diligent search.

■   Second, we agree with appellant that he was not required to make deceptive or misleading statements to prospective employers in seeking substitute employment.  Appellant testified that because he had twenty-two years of State service at the time of his removal and would have become eligible for free lifetime health coverage as well as enhanced pension benefits upon the completion of twenty-five years of service, he had a firm intent to accept reinstatement if he prevailed in his appeal from the removal.  Appellant also testified that he would have felt obligated to inform any prospective employer about the circumstances of his removal and of his intent to return to State service if afforded the opportunity.

However, in concluding that appellant would have been able to obtain comparable substitute employment, the State's employment expert took the position that appellant would not have been required to disclose his intent to return to State service to a prospective employer.  During cross-examination, he testified:

> Q.  Is he supposed to conceal that [he's suing to get his job back] and not answer the question truthfully?
>
> A.  Yes.
>
> Q.  He's supposed to lie to the—
>
> A.  I didn't say lie, but I certainly wouldn't tell him that I'm looking to get my job back with the State of New Jersey.
>
> . . . .
>
> Q.  And you wouldn't say that because, as you testified earlier under oath, that if he said that, he wouldn't get a job?
>
> A.  I believe that is the case.

The ALJ's recommended initial decision seemed to accept this testimony:

> Common sense and practice does not call for total candor in every aspect of the interview process.  In O'Lone's situation, where he did not know whether he would get his job back and he did not know how a new job would compare to his job with the State in terms of salary and benefits—particularly if he was in alternative employment for some time before reinstatement—he surely could have handled the issue of whether he would return to State employment without lying.  His

indication that he was unwilling to apply any finesse whatsoever in this aspect of a possible interview seems to indicate again disinterest in finding other employment.

We do not believe that the Board may impose an obligation upon a public employee to deceive or mislead a prospective employer as a condition of obtaining back pay without reduction for what the employee could have earned from substitute employment during a period of separation from public service. This does not mean that a separated employee seeking substitute employment should present negative information in a manner designed to discourage an employment offer. Such an employee has an obligation to seek substitute employment in good faith. However, in determining whether suitable substitute employment was available to appellant, the Board should not assume he would have deceived or misled prospective employers.

Accordingly, we reverse the part of the Board's final decision denying appellant's back pay claim for the period from his removal from State service until April 29, 1997, and remand the case to the Board for a redetermination of back pay in conformity with this opinion. Jurisdiction is not retained.