834 A.2d 1026

YVETTE GRASSO, PLAINTIFF–RESPONDENT/CROSS–APPEL-
LANT, v. WEST NEW YORK BOARD OF EDUCATION, DEFEN-
DANT–APPELLANT/CROSS–RESPONDENT, AND ANTHONY
YANKOVICH, PABLO CLAUSELL, JANET PASSANTE, CLAIRE
WARNOCK, XENIA GAETA, NELSON DIAZ, AND FRANCESA
CORDASCO, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 23, 2003—Decided November 3, 2003.

110

114

Before Judges STERN, A.A. RODRIGUEZ and LEFELT.

*Alan C. Roth*, argued the cause for appellant/cross-respondent (*Ruderman & Glickman*, attorneys; *Mr. Roth*, on the brief).

*Judiann Chartier*, argued the cause for respondent/cross-appellant (*Oxfeld & Cohen*, attorneys; *Ms. Chartier*, on the brief).

The opinion of the court was delivered by

LEFELT, J.A.D.

Defendant West New York Board of Education rejected plaintiff Yvette Grasso's promotion applications for ten administrative and

supervisory positions from July 1996 to June 1997.[1] Plaintiff sued the Board and individually named defendants, claiming that by declining to promote her the Board violated the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42. A jury found that the Board discriminated against plaintiff on the basis of gender when it refused to promote her to one of the ten positions, high school assistant principal. The jury awarded plaintiff $110,000 as compensation for her emotional distress.

The trial judge reduced the jury's award on a motion for remittitur to $11,000, awarded plaintiff $66,737 in "bifurcated" back pay, and found it had no jurisdiction to award tenure and no jurisdiction to promote plaintiff or award front pay. Defendants appeal, contending that the trial court erroneously allowed the jury to consider a "stray remark," which the jury improperly relied upon to find discrimination. Defendants further contend that the back pay award was speculative because it assumed that had plaintiff been promoted she would have been rehired after the statutorily required one year appointment. *N.J.S.A.* 18A:28–7. Plaintiff cross-appeals from the trial court's denial of front pay and promotion and from the trial court's remittitur. We affirm the jury's verdict as reduced by the trial court, and affirm the court's denial of front pay and promotion, but reverse the back pay award and remand for reconsideration of that issue.

## I.

Here are the pertinent facts and procedural history. Plaintiff is a tenured teacher employed by defendant board. She began working for the West New York school district in 1981 as an ESL teacher, teaching English as a second language. She served as head teacher of ESL for five years.

After becoming certified to serve as an administrator, supervisor, or principal, she applied for ten promotional positions within

---

[1] Plaintiff's complaint had alleged that she applied for eleven promotional positions, but the parties agreed that only ten positions were in issue.

the district that were posted from July 1996 through June 1997. Plaintiff was interviewed for every position for which she applied, but each time the Board promoted another.

At the trial of plaintiff's LAD complaint, defendant Anthony Yankovich, Assistant Superintendent for Personnel, and defendant Dr. Pablo Clausell, Superintendent of Schools, testified regarding the Board's hiring process. They stated that in 1996, the Board established a formal interview process. Yankovich, Clausell, and the building principal, or some combination thereof, would interview each candidate and complete a form "rating sheet."

Clausell, Yankovich, and Principal Shroeder interviewed plaintiff for the high school assistant principal position, but the Board ultimately hired Israel Rodriguez effective July 1, 1997. At trial, Yankovich testified that he recommended Rodriguez for the position based upon Shroeder's recommendation. Yankovich explained as follows:

Q. Do you recall anything that led you to recommend him as the better candidate?

A. Mr. Schroeder's recommendation to me.

Q. You're saying it was Mr. Schroeder's—

A. Yeah.

Q. —recommendation?

A. Yeah, I—yeah, because, at that time, he felt he wanted a Hispanic male in there, in the assistant principal position.

Q. You're saying he said he wanted an Hispanic male?

A. Yeah, he says there's a need for a bilingual person in the high school.

Q. And he specifically said he wanted a male?

A. Well, that's—yeah—I'm sorry, let me put it this way. He wanted a bilingual person in the high school, but at the conclusion of the interviews, he recommended Israel Rodriguez to me.

Yankovich admitted he had concerns about promoting Rodriguez because he had no high school experience and never served as supervisor or coordinator. But while Rodriguez was only an eighth-grade teacher, he had adult experience working in a community college. Of course, plaintiff had worked in the high school for years and had head teacher and coordinator experience.

Of the seven applicants for this position, five including plaintiff and Rodriguez received "recommended" ratings on the interview rating sheets. After the interviews were concluded, Clausell made the final recommendation to the Board.

Defendants defense at trial was limited to asserting that no unlawful discrimination occurred and in fact the district hired the most qualified person for each of the promotional positions for which plaintiff had applied, including the one in which the Board ultimately selected Rodriguez.

Pursuant to the parties' agreement, the jury's role was limited to determining whether defendants had unlawfully discriminated against plaintiff, and if so, what damages would fairly compensate plaintiff for her emotional distress. The jury decided that plaintiff proved "by a preponderance of the evidence that she was not hired for a position because the Defendant engaged in unlawful employment discrimination against her due to her status as a[ ] Hispanic female." The jury also found that defendant did not "articulate or advance legitimate nondiscriminatory reasons for its hiring decisions." In addition, the verdict sheet required the jury to indicate "which position or positions [plaintiff] failed to obtain due to the discrimination." In response to this question, the jury checked "High School Assistant Principal for April, 1997," which was the position filled by Rodriguez.

The jury awarded plaintiff $110,000 "for emotional distress damages she sustained as a proximate result of the conduct of the defendants." Upon defendants' remittitur motion, the court reduced this award to $11,000.

Subsequent to the jury verdict, the court considered back pay, front pay and reinstatement. The court awarded plaintiff two years back pay from July 1, 1997, the date Rodriguez assumed the position at issue, through June 30, 1999, and additional back pay for the period between June 30, 1999 and trial. The court termed the award "bifurcated" back pay. The court also found that it had no jurisdiction to award front pay or to promote and award tenure.

## II.

■ We consider each of the arguments raised on the appeal and cross-appeal. Defendants first argue that the trial court committed plain error when it allowed the jury to consider Shroeder's "stray remarks" to Yankovich that he was looking for a "Hispanic male." Defendants contend that because there was no evidence that Shroeder's remarks found their way to the Board, which was the only decision maker, it was plain error not to instruct the jury to disregard the remarks.

■ Federal courts have held that comments by individuals outside the decision making process are considered stray remarks, which on their own are inadequate to support an inference of discrimination. *Walden v. Georgia–Pacific*, 126 *F*.3d 506, 521 (3d Cir.1997), *cert. denied*, 523 *U.S.* 1074, 118 *S.Ct.* 1516, 140 *L.Ed.*2d 669 (1998). There are occasions, however, when such remarks are considered "relevant as probative of informal managerial attitudes" even if the person who made the remark did not take part in the decision and the statement was made two years before the employment action at issue. *Ryder v. Westinghouse Elec. Corp.*, 128 *F*.3d 128, 133 (3d Cir.1997), *cert. denied*, 522 *U.S.* 1116, 118 *S.Ct.* 1052, 140 *L.Ed.*2d 115 (1998) (discussing *Brewer v. Quaker State Oil Ref. Corp.*, 72 *F*.3d 326, 333–34 (3d Cir.1995)). Furthermore, discriminatory comments made by one with input into the decision-making process are not stray remarks. *Abramson v. William Paterson Coll. of N.J.*, 260 *F*.3d 265, 286 (3d Cir.2001) (citing *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 *F*.3d 46, 55 (1st Cir.2000)) (stating that "discriminatory comments ... made by ... those in a position to influence the decisionmaker" can be evidence of pretext). Under the federal case law, "it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision ...." *Abramson, supra*, 260 *F*.3d at 286.

■ Here, Shroeder participated in the selection process by interviewing plaintiff and making recommendations to Yankovich.

His remarks should not be considered "stray," and even if they were, they should be admissible as evidence of managerial preference.

Although defendants claim no evidence linked these remarks to the Board, such an inference can be drawn from the evidence that was presented. For example, it seems obvious that the Board would not want to saddle a principal with an assistant who was unacceptable to the principal. Yankovich said, "being the high school principal, we certainly wanted to ... accommodate him. This is the person he has to work with." Yankovich clarified that "[i]t would be very difficult as a superintendent or an assistant superintendent to give someone an assistant principal who they didn't want and hold them accountable if it didn't work out." Clausell shared these views and indicated that principals were included in the interview process for assistant principal positions because "we wanted to make sure that there was a chemistry there that would be supportive of each other to fulfill the requirements for the position." When Yankovich was asked whether there was "any occasion on which Dr. Clausell did not follow [his] recommendation," Yankovich answered "[n]o."

The testimony also revealed that the Board must have heavily relied on the recommendations of Superintendent Clausell. Yankovich testified that "[a]ll recommendations for hiring have to go [to] the Superintendent." When asked whether "the ultimate determination as to who to promote was Dr. Clausell's," Yankovich reiterated "[h]e makes the final recommendation." As Yankovich explained, "[n]o person can be promoted without the Superintendent's approval to [the] Board."

■ Considering the fact that there was no evidence presented by either party regarding the Board's decisional process in promoting Rodriguez instead of plaintiff or the other applicants, the jury had sufficient evidence to infer that the Board's promotion of Rodriguez was probably tainted by Clausell's recommendation which was affected by Shroeder's discriminatory preference. Moreover, "it is plainly permissible for a jury to conclude that an

evaluation at any level, if based on discrimination, influenced the decision making process and thus allowed discrimination to infect the ultimate decision." *Roebuck v. Drexel Univ.,* 852 *F.*2d 715, 727 (3d Cir.1988).

## III.

In its verdict, the jury awarded plaintiff $110,000 as compensation for the emotional distress she suffered as the result of defendants' unlawful discrimination. The judge granted defendants' remittitur motion and reduced the compensation to $11,000. Plaintiff's cross-appeal challenged this reduction.

Trial courts should set aside excessive verdicts only in "clear" cases. *Caldwell v. Haynes,* 136 *N.J.* 422, 431–32, 643 *A.*2d 564, 568–69 (1994) (citing *Fritsche v. Westinghouse Elec. Corp.,* 55 *N.J.* 322, 330, 261 *A.*2d 657, 661 (1970)). Here the judge stated that "the amount of damages [$110,000] awarded to this plaintiff certainly do shock the conscience and I find that they are excessive." She supported her remittitur decision by observing that the "emotional distress was not ever specifically connected to this position." There was no expert testimony detailing how plaintiff was affected by defendants' actions with regard to the one position in which the jury concluded unlawful discrimination had occurred. In short, plaintiff's testimony was "all inclusive."

Despite the phrasing of the verdict sheet, which seemed to ask for damages only in those instances of discrimination, the jury had no way to separate the emotional effect on plaintiff of this one rejection from the nine others. Thus, this was a "clear" case, and the court correctly reduced the verdict by remittitur "to the highest figure that could be supported by the evidence." *Fertile v. St. Michael's Med. Ctr.,* 169 *N.J.* 481, 500, 779 *A.*2d 1078, 1089 (2001).

## IV

Defendants object strongly to the trial court's back pay award. They point out that had plaintiff been promoted, as a non-

tenured administrator, she would have received only a one-year contract. The award of back pay, which was based on the difference between plaintiff's salary and what she would have earned as assistant principal, extended for longer than one year and was thus speculative, according to defendants. This is so because there could be no certainty that plaintiff would have been hired for a second or third year.

The court "bifurcated" the award and awarded plaintiff a total of three years and three months back pay, totalling $66,737. Because of the longevity of the award, defendants also argue that in essence the court speculated that plaintiff would have been granted tenure.

Back pay is awarded to make the discriminatee whole by reimbursing the economic loss suffered because of the discrimination. *Goodman v. London Metals Exch., Inc.*, 86 *N.J.* 19, 34–35, 429 *A.*2d 341, 349 (1981). The purpose of back pay is to compensate complainants to the fullest extent possible at the employment status they would have achieved, but for the unlawful discrimination. Alito, *N.J. Employment Law*, § 4–54:1, at 291 (2d ed. 1999). Back pay that is too speculative will not be ordered. *Andersen v. Exxon Co.*, 7 *N.J.A.R.* 481, 503 (Div. on Civil Rights 1982), *aff'd*, No. A–2940–79 (App.Div. Feb. 25, 1981), *aff'd as modified on other grounds*, 89 *N.J.* 483, 446 *A.*2d 486 (1982). But back pay is an equitable remedy, therefore, "mathematical certainty and exactitude is not required, especially as long as the award is based on a reasonable method of calculation." *Weiss v. Parker Hannifan Corp.*, 747 *F.Supp.* 1118, 1132 (D.N.J.1990); *see Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 443–45, 561 *A.*2d 1130, 1135–36 (1989).

In making the back pay award, the judge attempted to balance the need to compensate plaintiff adequately under the LAD with a perceived need to avoid frustrating the relevant tenure and appointment statutes. She said the award constituted her best efforts not only to compensate plaintiff properly under the LAD but also "to effectively respect the tenure rights of the Board of Education."

All promotional positions are one-year appointments. *N.J.S.A.* 18A:28–7. For a tenured teacher who is promoted to a position such as assistant principal, the person could become tenured in the new position only after being rehired for the second and third consecutive years. *N.J.S.A.* 18A:28–5.

We reject defendants' argument that because plaintiff would have received only annual contracts, back pay can be awarded for only one year, or at the most two years. Neither the parties' research nor ours has discovered any state or federal case that has dealt with this precise issue. Our Supreme Court, however, has ruled on a similar issue.

In *Terry v. Mercer County Bd. of Chosen Freeholders,* 86 *N.J.* 141, 430 *A.*2d 194 (1981), the Court determined that the Director of the Division on Civil Rights was authorized to order that three employees, who were denied promotion because of unlawful discrimination, be promoted to the positions denied them when such positions became available. This order was affirmed despite the County's argument that its implementation would violate the civil service statutorily based "rule of three," *id.* at 152, 430 *A.*2d at 200, which requires that the appointing authority select one of three individuals certified for a particular position. *Id.* at 149, 430 *A.*2d at 198; *N.J.S.A.* 11:22–16 [now *N.J.S.A.* 11A:4–8].

In the course of rendering its decision, the Court noted that the LAD, "and the constitutional precepts of equal rights which it vindicates, reflect a pervasive public policy. Its objectives are constant and have a vital place throughout the panoply of state laws and actions." *Id.* at 151, 430 *A.*2d at 199. Given this important "pervasive public policy," the Court held that the "rule of three" must be tempered "to effectuate the overarching equal rights goals of the [LAD]." *Id.* at 151–52, 430 *A.*2d at 199. In the course of its decision, the Court also noted consonance with federal decisions that have also not hesitated to provide promotional relief under Title VII of the Civil Rights Act, 42 *U.S.C.A.* 2000e–5, notwithstanding civil service regulations and principles. *Id.* at 151, 430 *A.*2d at 199 (citing *e.g., Richerson v. Jones,* 551

F.2d 918, 924–25 (3d Cir.1977); *Guilday v. Dep't of Justice*, 485 *F.Supp.* 324, 325 (D.Del.1980)).

The award of annual contracts to principals and administrators and the applicable tenure rules should not prevent a court from fashioning a meaningful remedy to ensure that the vestiges of unlawful discrimination are removed to the fullest extent practical. Plaintiff should be placed in the work place position or an equivalent that she could have achieved were it not for the discrimination. *Terry, supra*, 86 *N.J.* at 157, 430 *A.2d* at 202.

Here, had plaintiff been appointed, we do not know whether she would have successfully performed the job and achieved reappointment and eventually tenure in the position. This uncertainty, however, cannot be utilized to frustrate the LAD's overarching strong policy of eliminating unlawful discrimination from all facets of employment. *E.g., Lehmann v. Toys 'R' Us, Inc.*, 132 *N.J.* 587, 600, 626 *A.2d* 445, 451–52 (1993); *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 590, 538 *A.2d* 794, 802 (1988) (the LAD is remedial social legislation that must be liberally construed).

Such limitation on the duration of a back pay award would unreasonably impair the remedial goals of the LAD and credit a defendant, who has unlawfully discriminated against a plaintiff, with the presumption that plaintiff would have done poorly in the position at issue. It is well to consider that we are uncertain about plaintiff's performance in the new position because defendants' unlawful discrimination deprived plaintiff of the opportunity to demonstrate satisfactory performance.

Defendants also argue that a portion of plaintiff's back pay award is actually front pay and plaintiff is not entitled to recover front pay under the common law "no work, no pay" doctrine. They argue that the doctrine applies to preclude awards of front pay where no contract or statute requires pay for work not performed.

In *State v. Int'l Fed'n of Prof'l and Technical Eng'rs, Local 195*, 169 *N.J.* 505, 510, 780 *A.2d* 525, 527 (2001), our Supreme Court

abolished the doctrine within the context of reviewing a back pay award. In the course of its decision, the Court noted that "[s]tatutory bases for awards of back pay are also prevalent in the contexts of education, discrimination, unfair labor practices, and public employment generally." *Id.* at 536, 780 *A*.2d at 544. The Court found the "no work, no pay" doctrine to be "both harsh and unnecessary." *Id.* at 539, 780 *A*.2d at 546. Because we affirm the trial court's preclusion of front pay, however, we need not resolve defendants' argument. Accordingly, we decline to consider whether any portion of the discredited doctrine, established in 1859, remains viable.

## V

In reviewing the duration of the back pay award that was entered in this case, we are uncertain how the judge's concern over tenure impacted upon the award. Because we have concluded that tenure considerations, within the context of this case, should not have concerned the judge, and we are uncertain of the factors that informed the duration of the back pay award, we must reverse and remand for reconsideration of the award. To assist the trial court in the remand and to resolve the remaining issues in the appeal, we add the following discussion on appropriate remedies.

By its verdict, the jury found that defendant "engaged in unlawful employment discrimination" against plaintiff, and plaintiff failed to obtain the high school assistant principal position "due to the discrimination." We do not interpret the jury's verdict as concluding that plaintiff would have been promoted to the assistant principal position in the absence of unlawful discrimination. Even if the jury did so decide, the record is insufficient to make such a decision.

There were five applicants for the position in issue who were "recommended" on the interview sheets. Thus, three applicants other than plaintiff and Rodriguez applied for the assistant principal position. The jury had before it only testimony comparing

plaintiff's qualifications with Rodriguez's. The record does not indicate the names, genders or qualifications of any of the other applicants. While some documents recording the promotion process were available, including the interview sheets for all applicants, neither plaintiff nor defendants offered these documents into evidence. It was therefore impossible for the jury to determine whether plaintiff would have been promoted if Rodriguez was not.

The record does, however, contain evidence that plaintiff belonged to a protected group, was qualified for promotion to the assistant principal position but was nevertheless rejected for the position when the district promoted a person with less qualifications than plaintiff. *See McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.*2d 668 (1973). Thus, the record supports the jury's determination that defendants' unlawful discrimination deprived plaintiff of the opportunity of being promoted to assistant principal. In the absence of discrimination, there would have been at least an opportunity for plaintiff to have been the person promoted from the five "recommended" applicants.

We leave for the trial judge on remand to determine what duration of back pay would fairly compensate plaintiff for the loss of this opportunity. "In calculating a back-pay award, [a] court must, as nearly as possible, recreate the conditions and relationships that would have been, had there been no unlawful discrimination." *Walker v. Dalton,* 89 *F.Supp.*2d 20, 24 (D.D.C.2000) (citations and internal quotations omitted). Care should be taken, however, not to place plaintiff in a better position than she would have enjoyed had there been no unlawful discrimination. *E.g., Trosky v. Pittsburg Civil Service Comm.,* 539 *Pa.* 356, 652 *A.*2d 813, 818 (1995).

But it should not be overlooked that it was defendants' unlawful discrimination that precluded proper consideration of plaintiff's candidacy for the assistant principal position. Failure to award some back pay for plaintiff's lost opportunity would render the loss uncompensated and assume that plaintiff would not have

been promoted even absent the discrimination. This we should not do, especially here where the jury specifically rejected defendants' defense that it had promoted the most qualified applicant. The purpose of LAD remedies are not only to redress the emotional and economic effects of discrimination, but also to act "as a deterrent against future discrimination." *Shaner, supra,* 116 *N.J.* at 446, 561 *A.*2d at 1136; *Goodman, supra,* 86 *N.J.* at 34–35, 429 *A.*2d at 349; *O'Lone v. Dept. of Human Servs.,* 357 *N.J.Super.* 170, 179, 814 *A.*2d 665, 670 (App.Div.2003). It is better to require the employer that has unlawfully discriminated against plaintiff to "pay a little more than to permit an innocent party to shoulder the burdens of the guilty." *Kyriazi v. Western Elec. Co.,* 465 *F.Supp.* 1141, 1146 (D.N.J.1979), *aff'd,* 647 *F.*2d 388 (3rd Cir.1981).

Generally, after a finding of unlawful discrimination, back pay should be awarded unless its denial would not frustrate the statutory purpose of eradicating discrimination and the goal of making the plaintiff whole for all injuries suffered by the discrimination. *Albemarle Paper Co. v. Moody,* 422 *U.S.* 405, 419, 95 *S.Ct.* 2362, 2372, 45 *L.Ed.*2d 280, 297–98 (1975). *See Ostapowicz v. Johnson Bronze Co.,* 541 *F.*2d 394, 400–01 (3rd Cir.1976) (awarding back pay and other relief to redress "deprivations of opportunities to acquire skills on diverse jobs and thus secure promotions to better paying positions"), *cert. denied,* 429 *U.S.* 1041, 97 *S.Ct.* 741, 50 *L.Ed.*2d 753 (1977).

While the trial judge mistakenly believed she lacked jurisdiction to consider whether to direct promotion or front pay, we agree with her judgment declining to impose either remedy in this case. Promotion, and even the grant of tenure, can be appropriate remedies in particular circumstances. *Flanders v. William Paterson Coll. of N.J.,* 163 *N.J.Super.* 225, 231–33, 394 *A.*2d 855, 857–59 (App.Div.1976) (upholding order of Director of Division on Civil Rights that woman associate professor be promoted to full professor); *but see Picogna v. Cherry Hill Tp. Bd. of Educ.,* 143 *N.J.* 391, 402, 671 *A.*2d 1035, 1040 (1996) (where tenure

was not conferred despite breach of a contract covering a full probationary employment period that may have resulted in tenure had no breach occurred).

Front pay can be awarded to "compensate the employee for future lost wages attributable to [an] employer's misconduct." *Baker v. Nat'l State Bank*, 353 *N.J.Super.* 145, 158, 801 *A.*2d 1158, 1166 (App.Div.2002). Its award "is discretionary with the trial court." *Dillon v. Coles*, 746 *F.*2d 998, 1006 (3rd Cir.1984), *but see Cavuoti v. New Jersey Transit Corp.*, 161 *N.J.* 107, 135, 735 *A.*2d 548, 564 (1999) (agreeing "that a claim for future lost wages (front pay) is to be decided by a jury not a judge"). Front pay is awarded instead of reinstatement, Alito, *N.J. Employment Law* § 4:54–3, at 297, or for the period "between judgment and reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 *U.S.* 843, 846, 121 *S.Ct.* 1946, 1948, 150 *L.Ed.*2d 62, 66 (2001). "It differs from a back pay allowance because it necessarily implicates a prediction about the future." *Dillon, supra*, 746 *F.*2d at 1006.

In this instance, as we have noted, the record does not indicate that plaintiff would have been promoted absent the unlawful discrimination. The record is inadequate to justify either directing an immediate promotion or even a promotion to the first available high school assistant principal position. Because the record does not demonstrate that plaintiff's promotion was probable or even reasonably likely absent discrimination, she cannot point to any wage loss that she will suffer in the future that was caused by the discrimination. A promotion or front pay award would place plaintiff in a better position than she would have been in had there been no unlawful discrimination. Neither promotion nor a front pay award are necessary to effectuate the purposes of the LAD in this case.

Thus, we affirm the discrimination verdict, remittitur, and the denial of front pay and promotion. We reverse the back pay award and remand for reconsideration of the award.

Affirmed in part, reversed in part and remanded.