9 A.3d 1032 (2010)
417 N.J. Super. 289
In the Matter of Anthony HEARN, Department of Education.
No. A-5780-07T1.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 2010.
Decided October 27, 2010.
*1035 Walter R. Bliss, Jr., Princeton Junction, argued the cause for appellant Anthony Hearn.
Todd A. Wigder, Deputy Attorney General, argued the cause for respondents Civil Service Commission and the New Jersey Department of Education (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Andrea R. Grundfest, Deputy Attorney General, on the brief).
Before Judges FUENTES, GILROY and ASHRAFI.
The opinion of the court was delivered by
ASHRAFI, J.A.D.
Appellant Anthony Hearn appeals from a final decision of the Merit System Board (the Board) denying him back pay and attorney's fees after he successfully appealed his demotion as a State employee. We reverse and remand to the Civil Service Commission (the Commission)[1] to determine an appropriate amount of attorney's fees and costs to award.

I.
Hearn, who is a certified public accountant, was employed in the Office of Compliance Investigations of the Department of Education (DOE) and was assigned to manage the Single Grant Audit Unit. In that position, he directed the work of eight employees who audited school districts and other educational entities for compliance with State and federal grants. Hearn displayed a high level of technical expertise and generally performed his duties in an "exemplary manner."
The DOE hired Crystal Feliciano, an African-American woman, in July 2003 to *1036 perform audits of federal Perkins Grants under Hearn's supervision. Hearn had been on Feliciano's interview committee and had "argued strenuously" in favor of hiring her. On April 8, 2004, Feliciano filed a discrimination complaint with the Office of Equal Employment Opportunity/Affirmative Action accusing Hearn of racial discrimination. In a letter accompanying her complaint, Feliciano detailed examples of Hearn's alleged discrimination, such as requiring Feliciano to read and take notes from a voluminous book about Perkins Grants, referring to the African-American Director of the Office of Compliance Investigations as a "political appointee," failing to attend the first day of Feliciano's first audit, asking Feliciano to photocopy a document, paging Feliciano while she was driving on the Turnpike, and failing to give Feliciano consideration for favored work assignments and schedules.
On September 7, 2004, the DOE Commissioner wrote to Hearn advising that Hearn had violated the State Policy Prohibiting Discrimination in the Workplace (anti-discrimination policy), N.J.A.C. 4A:7-3.1. On that same date, the Director of Administration and Human Resources wrote that the DOE was "taking formal disciplinary action" against Hearn by removing his supervisory responsibilities, demoting him, and requiring him to attend diversity training.
Hearn was demoted from his title of Manager 1, Education, in the unclassified service to the title of Planning Associate 1, School Finance, in the non-competitive division of the career service. He filed an appeal to the Board. On July 13, 2005, the Board granted Hearn's request for a hearing by an Administrative Law Judge (ALJ). Before the administrative hearing was held, Hearn applied for and obtained a regular appointment to the title of Education Program Development Specialist 1, which is also in the non-competitive division of the career service. See N.J.S.A. 11A:4-13(a) and N.J.A.C. 4A:3-1.2 (setting forth types of career service appointments).
The hearing before the ALJ was held on nine dates from August through October 2006. On April 13, 2007, the ALJ issued his decision finding that Hearn did not discriminate against Feliciano and other minority employees because of their race and did not violate the State anti-discrimination policy. The ALJ noted that Hearn lacked "certain important elements of supervisory skill" in that "[h]e spoke quickly, could be abrasive, rude, sharp, abrupt and loud." He also noted that Hearn "valued efficiency and a machine-like approach over the consideration of personal needs and human realities." With respect to Feliciano's allegations, the ALJ stated:
Given the totality of the evidence and having assessed the individual incidents and circumstances described and the complete picture presented, I am convinced that Mr. Hearn was credible when he testified that he did not treat anyone differently because of their race or ethnicity.
The ALJ recommended that the finding of discriminatory conduct be purged from Hearn's personnel record and that he be restored to his former title of Manager 1. He concluded that Hearn was entitled to recover back pay if appropriate. He also recommended that Hearn
should receive an award for counsel fees, as such is fully appropriate given the nature of the allegations and findings below, the burden placed upon Hearn to clear his name, and the significant costs involved to do so in a case in which, unlike those who merely defend against an agency's charges in [Merit System Board] appeals of agency discipline, he *1037 had to take on the burden to prove his innocence.
On October 24, 2007, the Board adopted the ALJ's findings of fact and recommendation to return Hearn to his former title, but it declined to adopt the ALJ's recommendation to award Hearn back pay and attorney's fees. Hearn filed a motion for the Board to reconsider rescission of his appointment to a classified position. On June 27, 2008, the Board confirmed its decision.
Hearn filed a notice of appeal to this court in which he challenged the action of the Board in rescinding the classified title he obtained while his appeal was pending and in refusing to award back pay, attorney's fees, and costs. On December 17, 2008, pursuant to the agreement of the parties, we granted a limited remand for the Commission to conduct a desk audit of the duties performed by Hearn in his classified appointment and to reconsider the decision to return him to his former title. On February 11, 2009, the Commission issued a final administrative action amending its prior decision and ordering Hearn to return to the title of Planning Associate 1, retroactive to July 23, 2005. Hearn no longer challenges the designation of his title and position.
Furthermore, although Hearn's prayer for relief included back pay, he did not prove that he lost pay as a result of the DOE's actions. Neither the ALJ nor the Board found that Hearn actually lost pay. On appeal, the DOE takes the position that Hearn is not entitled to differential back pay because he refused reinstatement to the Manager 1 title and chose to remain as a Planning Associate 1. Hearn has not refuted that position. Therefore, the only issue that remains on appeal is the Board's denial of attorney's fees and costs.

II.
In rejecting the ALJ's award of attorney's fees and costs, the Board explained:
[A]ppellant has not shown that the actions of the appointing authority in finding a violation of the State Policy and terminating his unclassified position were made in bad faith. An investigation of Feliciano's complaint was properly conducted and the appointing authority concluded, albeit erroneously, that the appellant violated the State Policy. The record does not reflect that the appointing authority's conclusion was made with invidious motivation. Therefore, the appellant is not entitled to back pay or counsel fees.
We exercise limited powers in reviewing actions of an administrative agency. In re Carter, 191 N.J. 474, 482, 924 A.2d 525 (2007). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28, 926 A.2d 350 (2007).
Our inquiry is limited to determining:
(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[Mazza v. Bd. of Trustees, 143 N.J. 22, 25, 667 A.2d 1052 (1995) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963)).]
*1038 "When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field. Deference controls even if the court would have reached a different result in the first instance." Herrmann, supra, 192 N.J. at 28, 926 A.2d 350 (citations omitted). On the other hand, we are not bound by an agency's interpretation of a statute or its determination of a strictly legal issue. Carter, supra, 191 N.J. at 483, 924 A.2d 525. On such issues, our standard of review is plenary.
A plenary standard of review, however, does not apply to an agency's interpretation of regulations that fall within a legislative scheme the agency is charged with implementing and enforcing. We are required to defer to such agency interpretations if they are reasonable. See In re Election Law Enforcement Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 260, 989 A.2d 1254 (2010); see also Med. Soc. of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990) (courts place great weight on interpretation of laws by an agency entrusted with their enforcement).
A State agency's interpretation of its own regulations is presumed to be valid. Matter of Chief Clerk, 282 N.J.Super. 530, 536-37, 660 A.2d 1217 (App.Div.), certif. denied, 142 N.J. 573, 667 A.2d 191 (1995). "An appellate court must abide by that rule of deference unless the agency's interpretation is plainly unreasonable." In re Election Law Enforcement, supra, 201 N.J. at 260, 989 A.2d 1254 (internal quotation marks omitted).

III.
Hearn argues an award of attorney's fees was mandatory under Department of Personnel regulations in Title 4A of the New Jersey Administrative Code. Reciting the wording of the September 7, 2004 letter stating that "the Department of Education is taking formal disciplinary action against you in accordance with N.J.A.C. 4A:2-2.3(a)9," Hearn argues that under applicable provisions of the administrative code, the Board was required to award reasonable attorney's fees when he prevailed on his appeal. He cites N.J.A.C. 4A:2-2.12(a), which provides:
The [Board] shall award partial or full reasonable counsel fees incurred in proceedings before it ... where an employee has prevailed on all or substantially all of the primary issues before the Board.
The Board responds that the quoted regulation is not applicable to Hearn. N.J.A.C. 4A:2-2.1(a) limits "[t]his subchapter... only to permanent employees in the career service or a person serving a working test period." According to the Board, N.J.A.C. 4A:2-2.3(a)(9) and -2.12(a) apply only to classified employees because those regulations are within subchapter 2, and Hearn was an unclassified employee in his position as Manager 1, Education.
In rebuttal, Hearn contends that N.J.A.C. 4A:2-2.1(b) nevertheless allows the appointing authority to establish major disciplinary procedures for "other employees." He argues the DOE was applying the provisions of subchapter 2 to him when it cited N.J.A.C. 4A:2-2.3(a)(9) in its September 7, 2004 letter as the legal authority for the actions taken against him, including his demotion.
In written decisions dated July 13, 2005, and November 23, 2005, the Board acknowledged that the applicable procedural rules for Hearn's appeal were those governing disciplinary appeals under subchapter 2, but it also determined that:
despite the DOE's designation of [Hearn's] change in employment status *1039 as a "disciplinary demotion," it was not. Discipline, as set forth in N.J.A.C. 4A:2-2.1, provides that it applies only to permanent employees in the career service or a person serving a working test period. Hearn had no underlying career service status. Therefore, his change in employment status was not a "disciplinary demotion."
Initially, we agree with the Board that the reference to a regulatory provision in the letter notifying Hearn of the agency's action did not "establish" a scheme of major discipline for unclassified employees under N.J.A.C. 4A:2-2.1(b). An appointing authority may establish major disciplinary procedures for non-career service employees, such as Hearn, by promulgating specific rules that would be applicable in all cases. The DOE's letter of September 7, 2004, was not a promulgation of an agency rule. It neither negated the provision of N.J.A.C. 4A:2-2.1(a) that subchapter 2 applies only to classified employees nor established major disciplinary procedures for "other employees."
We conclude, however, that the Board erred as a matter of law in failing to apply correctly the procedural provisions of chapter 7 of the regulations, which apply to the State anti-discrimination policy. Furthermore, we conclude that the Board was unreasonable in its conclusion that Hearn's demotion was not a "disciplinary demotion."
Although we owe deference to the Board's interpretation of its own implementing regulations, the Board did not address application of the relevant procedural regulations in chapter 7. It assumed that disciplinary actions are authorized only under chapter 2 of the regulations. That assumption was a legal determination subject to our plenary review. We conclude it was mistaken and deprived Hearn of the procedural rights afforded to him under chapter 7.
While rejecting applicability of chapter 2, subchapter 2, to Hearn's appeal, the Board stated in its 2005 decisions that Hearn's matter would proceed as a "discrimination appeal" under the provisions of N.J.A.C. 4A:7-3.3(b). That regulation, which was repealed in 2007, was a procedural provision applicable to a finding under chapter 7 that an employee had violated the anti-discrimination policy. In relevant part, it stated:
The employee(s) against whom the [discrimination] complaint is made may appeal the decision to the Merit System Board within 20 days of receipt of the determination that a violation of the policy has been substantiated. However, if disciplinary action is recommended therein, the procedures for the appeal of disciplinary action shall be followed.
After repeal of that regulation while this matter was pending, similar provisions were adopted as part of N.J.A.C. 4A:7-3.2.
Subsection (n) of the latter amended regulation now authorizes an appeal to the Commission by an employee who has been found to have violated the anti-discrimination policy. A provision of subsection (n) states: "If disciplinary action has been recommended in the final letter of determination, the party(ies) charged may appeal using the procedures set forth in N.J.A.C. 4A:2-2 and 3." N.J.A.C. 4A:7-3.2(n)(3). Thus, by regulation, the procedures applicable to discrimination appeals involving disciplinary action are the same as those applicable to disciplinary action brought under chapter 2, subchapter 2, against permanent employees in the career service. Because demotion is considered a major disciplinary action under N.J.A.C. 4A:2-2.2(a), Hearn's appeal required application of the procedural rules contained in N.J.A.C. 4A:2-2.
*1040 The Board and the DOE argue that N.J.A.C. 4A:7-3.2(n) is only applicable to employees in the career service. We disagree.
The use of the term "party(ies)" in subsection (n) evinces no intent to limit the right of appeal to employees in the career service. If we were to limit application of subsection (n) as the Board and the DOE contend, the anti-discrimination policy itself, N.J.A.C. 4A:7-3.1, would not apply to Hearn because he was not in the career service. Yet that policy clearly applied to Hearn. N.J.A.C. 4A:7-3.1(k) refers to action that may be taken against "[a]ny employee found to have violated any portion or portions of this policy." Just as any State employee must adhere to the anti-discrimination policy, any State employee has a right to appeal disciplinary action taken because of an adverse finding that he has violated the policy. Indeed, the Board acknowledged Hearn's right of appeal under the predecessor regulation although he was not a classified, career service employee.
We also reject the argument that subsection (n) covers a smaller set of State employees in comparison to subsection (m) of N.J.A.C. 4A:7-3.2, which pertains to an appeal of the agency's decision by a person who has complained of discrimination. Subsection (m) applies to "[a] complainant who is in the career, unclassified or senior executive service, or who is an applicant for employment" while subsection (n) applies to "party(ies) charged" with discrimination.
Subsection (m) lists more precisely the persons who have a right of appeal because those who may bring discrimination complaints are not limited to State employees or applicants, but not all complainants are granted a right of appeal to the Civil Service Commission. For example, members of the public who come into contact with State employees, such as vendors, may file complaints with a State agency that a State employee has violated the anti-discrimination policy, but they may not appeal the agency's decision or action on that complaint to the Commission. In contrast, subsection (n) grants any State employee who has been disciplined for violating the anti-discrimination policy the right of appeal to the Commission.
We also conclude the Board unreasonably determined that Hearn's appeal was not a disciplinary appeal. The Board found that no "disciplinary action" was taken against Hearn within the meaning of that term in the regulations. The Board implicitly ruled that "disciplinary action" is available only under chapter 2 and only against career service employees. But "disciplinary action" may also be taken under chapter 7 against an employee who has been found to have violated the anti-discrimination policy. N.J.A.C. 4A:7-3.1(g)(2) and (3). The regulation further provides:

Any employee found to have violated any portion or portions of this policy may be subject to appropriate administrative and/or disciplinary action which may include, but which shall not be limited to: referral for training, referral for counseling, written or verbal reprimand, suspension, re-assignment, demotion or termination of employment.
[N.J.A.C. 4A:7-3.1(k) (emphasis added).]
This regulation does not limit imposition of disciplinary action to permanent employees in the career service.
The DOE letters of September 7, 2004, stated findings that Hearn had violated the anti-discrimination policy and that the DOE had taken disciplinary action against him by demoting him and requiring other remedial action. The DOE incorrectly cited N.J.A.C. 4A:2-2.3(a)(9) as *1041 authority for taking disciplinary action against Hearn. Its authority for doing so was N.J.A.C. 4A:7-3.1(k). Thus, Hearn's appeal was from disciplinary action taken against him under chapter 7, not under chapter 2.
In such a disciplinary appeal arising under the anti-discrimination policy of chapter 7, the Board was constrained to apply the same procedures established by chapter 2, subchapter 2, for the appeal of major disciplinary action by permanent employees in the career service. N.J.A.C. 4A:7-3.2(n)(3). Among those procedures is the provision quoted earlier in N.J.A.C. 4A:2-2.12(a) that the "Commission shall award partial or full reasonable counsel fees ... where an employee has prevailed on all or substantially all of the primary issues before the Board." (Emphasis added.)
The attorney's fees provision is a procedural regulation. "Court rules regulating attorney fees are not only clearly procedural but have also expressly been so declared." Du-Wel Prods., Inc. v. U.S. Fire Ins. Co., 236 N.J.Super. 349, 362, 565 A.2d 1113 (App.Div.1989) (citing Busik v. Levine, 63 N.J. 351, 372-73, 307 A.2d 571, appeal denied, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973)), certif. denied, 121 N.J. 617, 583 A.2d 316 (1990). See also N. Bergen Rex Transp. v. Trailer Leasing Co., 158 N.J. 561, 569, 730 A.2d 843 (1999) (attorney's fees are a matter of practice and procedure); Myron Corp. v. Atlantic Mut. Ins. Corp., 407 N.J.Super. 302, 311, 970 A.2d 1083 (App.Div.2009) (rules for the awarding of attorney's fees are procedural), aff'd o.b., 203 N.J. 537, 4 A.3d 999 (2010). Because N.J.A.C. 4A:2-2.12 is procedural, it is applicable by the terms of N.J.A.C. 4A:7-3.2(n) to appeals from findings of discrimination coupled with disciplinary action.
We conclude that the Board erred as a matter of law in neglecting to apply the provisions of N.J.A.C. 4A:7-3.2(n), or its predecessor, N.J.A.C. 4A:7-3.3(b), and ruling that the quoted provision of N.J.A.C. 4A:2-2.12(a) requiring an award of attorney's fees did not apply to Hearn's appeal.

IV.
Alternatively, even if an award of attorney's fees and costs was not mandatory under N.J.A.C. 4A:2-2.12(a), we conclude the Board erred in limiting such an award only to cases where the employing authority had acted in bad faith or with invidious motivation.

A.
N.J.A.C. 4A:2-1.5(b) provides alternative authority for awarding attorney's fees without regard to the classification of the employee. It states:
Back pay, benefits and counsel fees may be awarded in disciplinary appeals and where a layoff action has been in bad faith. See N.J.A.C. 4A:2-2.10. In all other appeals, such relief may be granted where the appointing authority has unreasonably failed or delayed to carry out an order of the Commissioner or Board or where the Board finds sufficient cause based on the particular case.
[N.J.A.C. 4A:2-1.5(b) (emphasis added).]
As stated, Hearn's appeal was a disciplinary appeal under the provisions of chapter 7 pertaining to violation of the State's anti-discrimination policy. Hearn was appealing the disciplinary action taken against him as authorized by that chapter. N.J.A.C. 4A:2-1.5(b) permits the award of attorney's fees in such "disciplinary appeals" without the need to show bad faith or invidious motivation.

*1042 B.
Even if Hearn's appeal is not viewed as a "disciplinary appeal," but instead is properly classified as an "other appeal" under N.J.A.C. 4A:2-1.5(b), attorney's fees could be awarded if the Board found "sufficient cause based on the particular case."
In concluding that Hearn had not shown "sufficient cause," the Board relied on its interpretation of prior Board decisions and our unpublished opinions. From these adjudicatory sources, the Board concluded that "sufficient cause" to award attorney's fees can only be shown where the agency's adverse action is motivated by bad faith or invidious motivation. It said that attorney's fees are not available where the agency's action was merely "administrative error."
Hearn argues that the Board erred in its application of the phrase "sufficient cause" because it ignored the ALJ's findings, it applied criteria not found in the regulation, and it exceeded its statutory authority by promulgating an amended regulatory standard without formal rule-making. He argues that the Board effectively re-wrote the regulation by relying on prior unpublished decisions to formulate a standard that attorney's fees may be awarded in non-disciplinary, or "other," appeals only if the adverse action was motivated by bad faith or invidious motivation.
The Legislature has authorized the Board to "award back pay, benefits, seniority and reasonable attorney fees to an employee as provided by rule." N.J.S.A. 11A:2-22 (emphasis added). No rule has been promulgated in accordance with the Administrative Procedure Act, N.J.S.A. 52:14B-4 to -7, limiting an award of attorney's fees for "sufficient cause" under N.J.A.C. 4A:2-1.5(b) to a showing of bad faith or invidious motivation by the agency. By interpreting and restricting the meaning of that phrase through adjudication rather than rule-making, the Board acted contrary to N.J.S.A. 11A:2-22 and the Administrative Procedure Act.
In DelRossi v. Department of Human Services, 256 N.J.Super. 286, 288-89, 606 A.2d 1128 (App.Div.1992), we reversed a decision of the Board awarding back pay and attorney's fees to a police officer. We noted that, in light of N.J.S.A. 11A:2-22, the Board did not have discretion concerning how to exercise its authority; it was required to decide the matter in accordance with duly promulgated rules. 256 N.J.Super. at 292, 606 A.2d 1128. Since the matter involved a non-disciplinary appeal, the only rule that could be applied was the "sufficient cause" provision of subsection 1.5(b). 256 N.J.Super. at 291-92, 606 A.2d 1128. Because that provision "contains no standards to guide the Board's exercise of the power delegated to it by N.J.S.A. 11A:2-22," the Board was required to engage in the rule-making procedure set forth in Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 331, 478 A.2d 742 (1984), to establish specific standards. DelRossi, supra, 256 N.J.Super. at 292, 294, 606 A.2d 1128. After our decision in DelRossi, the Board adopted specific guidelines for the awarding of back pay, see N.J.A.C. 4A:2-2.10(c), but it did not do the same for the awarding of attorney's fees for "sufficient cause."
Also relevant to our review is O'Lone v. Department of Human Services, 357 N.J.Super. 170, 173, 814 A.2d 665 (App. Div.2003), where we reversed a decision of the Board denying back pay to an employee who had failed to seek substitute employment during a separation from public service. We stated:
In arguing that the Board's finding that appellant failed to make any serious effort to obtain substitute employment is *1043 sufficient, by itself, to support the denial of his back pay claim, the Department relies upon a series of recent Board decisions that have denied back pay claims solely on the basis of an employee's failure to seek substitute employment. However, N.J.S.A. 11A:2-22 requires the Board to provide for the award of back pay "by rule." Consequently, the Board may not exercise this discretionary authority "by adjudication."
[357 N.J.Super. at 180, 814 A.2d 665 (citations omitted).]
Thus, we concluded in O'Lone that "the Board's recent decisions ... appear ... to adopt a rule of general application through adjudication rather than rule-making under the Administrative Procedure Act, N.J.S.A. 52:14B-4 to -7, contrary to N.J.S.A. 11A:2-22." 357 N.J.Super. at 180-81, 814 A.2d 665.
The Board's action in this case resembles that of the Board in O'Lone. The Board relied on prior decisions to formulate the general rule that employees who prevail in non-disciplinary appeals may only recover attorney's fees if the government agency took adverse action in bad faith or with invidious motivation. In reaching that conclusion, the Board adopted a rule of general application through adjudication rather than rule-making, thus violating N.J.S.A. 11A:2-22 and the Administrative Procedure Act.
"[A]n agency determination can be regarded as a `rule' when it effects a material change in existing law." Metromedia, supra, 97 N.J. at 330, 478 A.2d 742. N.J.A.C. 4A:2-1.5(b) requires the Board to determine whether "sufficient cause" exists to award attorney's fees based on the facts of each particular case. Nothing in the rule authorizes the Board to define "sufficient cause" as synonymous with "bad faith or invidious motivation" in all cases. The Board's decision made a "material change" in the meaning of "sufficient cause."
If the Commission wishes to adopt such a definition, it must comply with formal rule adoption procedures that require "public notice of the anticipated action, broad participation of interested persons, presentations of the views of the public, the receipt of general relevant information... and the opportunity for continuing comment on the proposed agency action before a final determination." Metromedia, supra, 97 N.J. at 331, 478 A.2d 742.
The Board erred in denying the request for attorney's fees based on its conclusion that Hearn was required to prove bad faith or invidious motivation by the DOE.

C.
In arguing for "sufficient cause" to award attorney's fees, Hearn asserts that the allegations against him implicated a significant liberty interest, thus imposing substantial costs of pursuing his appeal. A significant liberty interest arises when State action imperils "a person's good name, reputation, honor, or integrity" or imposes "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." Bd. of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558-59 (1972); accord Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 155-57, 390 A.2d 90 (1978).
Hearn argues that the Board did not consider the merits of the ALJ's decision to award attorney's fees. The ALJ found that the DOE's determination of racial discrimination "constitute[d] a serious mark, indeed a deep stain, upon the reputation of a State employee." He also found that the burden placed on Hearn to prove his innocence by N.J.A.C. 4A:7-3.3(f) (now *1044 N.J.A.C. 4A:7-3.2(n)(1)) contributed significantly to the costs of litigation placed upon him. These findings are supported by the record.
We conclude that the Board's rejection of the ALJ's recommendation on the basis of incorrect application of the regulations was arbitrary, capricious, and unreasonable. In the absence of more specific guidance by rule regarding the discretion of and limitation upon the Board in awarding attorney's fees to a prevailing appellant, we conclude in the circumstances of this case that the ALJ's findings establish sufficient cause for the award of attorney's fees to Hearn.

V.
Having determined that Hearn was entitled to attorney's fees and costs either pursuant to N.J.A.C. 4A:2-2.12(a) or N.J.A.C. 4A:2-1.5(b), we remand to the Commission to determine an appropriate amount.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] On June 30, 2008, the Department of Personnel was abolished by L. 2008, c. 29, § 1, and the functions, powers, and duties of the Merit System Board were transferred to the Civil Service Commission. N.J.S.A. 11A:11-1. Rulings in this matter were made by both the Board and the Commission.