44 A.3d 643 (2012)
426 N.J. Super. 366
S.J., Petitioner-Appellant,
v.
DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES and Hudson County Board of Social Services, Respondents-Respondents.
R.H., Petitioner-Appellant,
v.
Jennifer Velez, Commissioner, Department of Human Services Division of Family Development, Respondent-Respondent.
C.B., Petitioner-Appellant,
v.
Jennifer Velez, Commissioner, Department of Human Services Division of Family Development, Respondent-Respondent.
Nos. A-5714-10T1, A-5803-10T2.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 2012.
Decided June 13, 2012.
*644 Lisa C. Fennell, Jersey City, argued the cause for appellant S.J. (Northeast New Jersey Legal Services, attorneys; Ms. Fennell, of counsel and on the brief).
Stanley G. Sheats, Paterson, argued the cause for appellants R.H. and C.B. (Northeast New Jersey Legal Services, attorneys; Mr. Sheats, on the brief).
Jennifer Heger, Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (Jeffrey S. Chiesa, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Heger, on the brief).
Molly Moynihan, Deputy Attorney General, argued the cause for respondent Jennifer Velez, Commissioner, Department of Human Services, Division of Family Development (Jeffrey S. Chiesa, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Moynihan, on the brief).
Before Judges FUENTES, GRAVES, and J.N. HARRIS.
The opinion of the court was delivered by
JONATHAN N. HARRIS, J.A.D.
We view these back-to-back appeals upon the esoteric regulatory landscape of state-administered medical assistance programs funded by Title XIX (Grants to States for Medical Assistance Programs) and Title XXI (State Children's Health Insurance Program) of the Social Security Act. 42 U.S.C.A. § 1396; 42 U.S.C.A. § 1397aa. Appellants S.J., R.H., and C.B. were precluded from receiving healthcare benefits by the Division of Medical Assistance and Health Services's (the Division) closure (to new applicants) of the State Children's Health Insurance Program (SCHIP), which operated under the NJ FamilyCare rubric.[1] Although once eligible for NJ FamilyCare benefits as part of a program funded and administered by AFDC-related Medicaid, appellants lost their eligibility due to their increased income. They appeal the Division's individualized determinations that after losing their AFDC-related Medicaid eligibility, they became new applicants for purposes of the SCHIP, which barred new enrollees after February 28, 2010. They contend that the Division was obliged to transfer their entitlement and continue their healthcare benefits under the auspices of the SCHIP within the NJ FamilyCare program. *645 We consolidate the appeals for purposes of this opinion and affirm.

I.
We derive the factual background of these appeals from three separate administrative proceedings. There do not appear to be many, if any, genuine factual disputes.

A.
In October 2008, S.J. (and her minor grandson) began receiving healthcare benefits through NJ FamilyCare. S.J.'s particular benefits, referred to as AFDC-related Medicaid, were provided under the program's Title XIX segment. N.J.A.C. 10:69-1.1 to -12.10. Pursuant to the Division's rules, S.J. was subject to regular redeterminations to assess her continuing eligibility for AFDC-related Medicaid. N.J.A.C. 10:69-5.2 ("Redetermination is a review of factors affecting AFDC-related Medicaid eligibility, including, but not limited to, continued parental deprivation, or changes in income.").
On November 22, 2010, S.J. was approved to begin receiving federal Social Security disability benefits in the amount of $1011 per month on December 22, 2010. As a result of this unearned income, the Hudson County Division of Social Services terminated S.J. (but not her grandson) from the NJ FamilyCare program, effective January 1, 2011. The termination notice explained that "[a]s part of State Regulations effective [March 1, 2010,] [a]dults with unearned income ... are no longer eligible to receive [NJ] Family[C]are."
The putative authority for this termination was based upon the March 2, 2010 directive, contained in Medicaid Communication No. 10-01 issued by John Guhl, Director of the Department of Human Services (DHS). The directive stated that because of New Jersey's "unprecedented financial crisis," the Commissioner of the DHS intended to "modify enrollment levels in the NJ FamilyCare program as deemed necessary to ensure that monies expended for that program do not exceed the amount appropriated." To reduce enrollment, the directive stated that "[n]ew applications received on or after March 1, 2010[,] for NJ FamilyCare [would] no longer be processed for enrollment for higher income parents." On July 6, 2010, the directive was adopted by the Commissioner of the DHS, and incorporated into the DHS's regulatory framework. 42 N.J.R. 1404(a) (Jul. 6, 2010).[2]
S.J.'s newly-increased income triggered her ineligibility to receive AFDC-related Medicaid benefits, but did not arithmetically disqualify her from the higher-income-qualifying SCHIP-related healthcare benefits. However, because this occurred after February 29, 2010, S.J. was deemed a new applicant for benefits excluded from enrollment under N.J.A.C. 10:78-3.4(b), which states:
For all enrollment applications received after February 28, 2010, all programs under this chapter are closed to any enrollments of, or benefits for, parents and caretakers whose benefits are not funded or payable under Title XIX of the Social Security Act, except as described in (b)1 below. Therefore, such applications for such persons will not be processed for enrollment. This exclusion from enrollment and benefits additionally applies to parents or caretakers who are applying to enroll after being terminated from enrollment in the NJ FamilyCare Program, including, but not *646 limited to, individuals who have been terminated due to non-payment of premiums or other amounts due.
S.J. requested a "fair hearing" to (1) contest her expulsion from NJ FamilyCare, (2) challenge her new applicant classification, and (3) reverse the determination not to process her application for SCHIP-related healthcare benefits.
On May 3, 2011, an Administrative Law Judge (ALJ) reversed the termination of benefits and restored S.J. to the NJ FamilyCare program. The ALJ found that the language of the amended DHS regulations unambiguously closed applications only to new applicants, rather than to existing beneficiaries of NJ FamilyCare.
On June 6, 2011, Valerie J. Harr, Director of the Division, reversed the ALJ's decision. Director Harr explained, "although the NJ FamilyCare Program is often characterized as an `umbrella' which includes AFDC-related Medicaid, there are actually two distinct provisions of the Social Security Act that address eligibility for the NJ FamilyCare Program." Those two segments have different eligibility requirements. Under the AFDC-related Medicaid segment, the income requirements set forth in N.J.A.C. 10:69-10.3(b) must be satisfied. Under the SCHIP segment, higher-income parents qualify as long as the applicant's income remained below 200 percent of the Federal Poverty Level (FPL). N.J.A.C. 10:78-3.4(a)(6)(iv).
However, no new applications to the SCHIP segment received on or after March 1, 2010, were to be processed. Thus, Director Harr found that S.J., as a beneficiary under the AFDC-related Medicaid segment of NJ FamilyCare, could not transfer into the SCHIP because she was a new applicant to that specific segment, and it was closed to new applicants. Because S.J.'s unearned income precluded her from receiving AFDC-related Medicaid healthcare benefits, and because the SCHIP was closed to new applicants, S.J. could not receive benefits under either segment within the orbit of NJ FamilyCare.
S.J.'s appeal followed.

B.
In April 2006, R.H. and her son and daughter began receiving AFDC-related Medicaid healthcare benefits under NJ FamilyCare. On November 10, 2010, R.H. was notified by the Passaic County Board of Social Services that her and her then-nineteen-year-old daughter's healthcare benefits were being terminated on December 31, 2010.[3] The termination was due to R.H.'s increased unearned income, namely her receipt of unemployment benefits,[4] which caused the household income to exceed the income limits of AFDC-related Medicaid. R.H. was denied entry into the SCHIP because that program was closed to new applicants.
R.H. appealed the termination of her benefits, but not her daughter's. On November 30, 2010, she requested a "fair hearing." On April 6, 2011, an ALJ upheld R.H.'s termination. On June 9, 2011, Director Harr adopted the ALJ's decision, finding that R.H. was a new applicant to the SCHIP, and therefore "[could not] move into the [SCHIP] program because *647 the program closed to those individuals who were not already receiving benefits under [SCHIP] or had not submitted an application prior to March 1, 2010."
R.H.'s appeal followed.

C.
In March 2006,[5] C.B. and her minor child began receiving Medicaid payments. In January 2009, C.B.'s Medicaid benefits were converted to AFDC-related Medicaid healthcare benefits under NJ FamilyCare. On May 31, 2010, C.B. was notified by the Passaic County Board of Social Services that her and her son's healthcare benefits were being terminated. Although these benefits were later reinstated,[6] C.B. received a notice on December 21, 2010, terminating her healthcare benefits effective January 31, 2011. The termination notice stated:
Effective March 1, 2010, higher income parents are no longer eligible for NJ FamilyCare. These parents are identified by Program Status Codes of 497 or 498 due to unearned income. You may re-apply if your circumstances change.
At termination, C.B. was receiving $1624.88 per month in unemployment benefits, placing her above the AFDC-related Medicaid income eligibility limit. However, C.B.'s income still fell below the 200 percent FPL income standard for the SCHIP. N.J.A.C. 10:78-3.4(a)(6)(iv).
C.B. requested a "fair hearing," which resulted in a May 18, 2011 reversal by an ALJ "because her unemployment income [was] below 200% of the FPL and she has been a constant recipient of NJ FamilyCare benefits without a new application required since the commencement of benefits on or after September 2005."
On June 28, 2011, Director Harr reversed the ALJ's decision, finding that C.B. was a new applicant for the SCHIP and therefore ineligible for its benefits because "there is no longer a program. Her child, however, is eligible."
C.B.'s appeal followed.

II.

A.
"When reviewing a final decision of an administrative agency, our scope of review is limited." Burlington Cnty. Bd. of Soc. Servs. v. G.W., 425 N.J.Super. 42, 45, 39 A.3d 906 (App.Div.2012) (citing In re Herrmann, 192 N.J. 19, 27, 926 A.2d 350 (2007)). "`An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" In re Hearn, 417 N.J.Super. 289, 298, 9 A.3d 1032 (App.Div.2010) (quoting In re Herrmann, supra, 192 N.J. at 27-28, 926 A.2d 350).
Our analysis is restricted to determining:
(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could *648 not reasonably have been made on a showing of the relevant factors.
[In re Anthony Stallworth, 208 N.J. 182, 194, 26 A.3d 1059 (2011) (citing In re Carter, 191 N.J. 474, 482-83, 924 A.2d 525 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25, 667 A.2d 1052 (1995))).]
"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field. Deference controls even if the court would have reached a different result in the first instance." In re Herrmann, supra, 192 N.J. at 28, 926 A.2d 350 (citations omitted).
Notwithstanding the foregoing, we are not bound by an agency's "determination of strictly legal issue[s]." In re Carter, supra, 191 N.J. at 483, 924 A.2d 525 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973)). On such issues, our standard of review is plenary. However, a plenary standard of review does not apply to an agency's interpretation of regulations that fall within a legislative scheme the agency is charged with implementing and enforcing. In re Hearn, supra, 417 N.J.Super. at 298, 9 A.3d 1032. In such a case, we are required to defer to such interpretation, see Nordstrom v. Lyon, 424 N.J.Super. 80, 97, 35 A.3d 710 (App.Div.2012), "unless the agency's interpretation is plainly unreasonable." In re Election Law Enforcement Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 260, 989 A.2d 1254 (2010).

B.
The Division has been tasked, by statute, to administer New Jersey's participation in Medicaid, as well as oversee the state's implementation of the SCHIP. See N.J.S.A. 30:4D-7; N.J.S.A. 30:4J-9 and -10. By administrative regulation, the Division "is the single State agency for receipt of Federal funds under Title XIX (Medicaid) and Title XXI (the State Children's Health Insurance Program (SCHIP)) of the Social Security Act." N.J.A.C. 10:49-1.2(a).
The use of the label "NJ FamilyCare," unfortunately, has not been rigorously applied. For example, it is defined broadly as "the health insurance coverage program administered by [the Division] under the provisions of Title XIX and Title XXI of the Social Security Act." N.J.A.C. 10:49-1.3.[7] However, N.J.S.A. 30:4J-11 defines "NJ FamilyCare" by reference to the SCHIP program only. See also N.J.A.C. 10:49-1.2 ("In New Jersey, the SCHIP program is known as NJ FamilyCare."). Notwithstanding semantic overlaps, the statutory and regulatory framework clearly contemplates separate programmatic attributes for the programs underwritten by Title XIX (Medicaid) and Title XXI (SCHIP) of the Social Security Act.
For example, eligibility for NJ Family-Care-Plan A is governed mostly by N.J.A.C. 10:69 ("AFDC-related Medicaid"), while eligibility for the other NJ FamilyCare plans are generally governed by N.J.A.C. 10:78 ("NJ FamilyCare"). If an individual is eligible for NJ FamilyCare-Plan A, he or she cannot qualify for another plan. See N.J.A.C. 10:78-1.1(a) ("This chapter contains the criteria for NJ FamilyCare eligibility for certain uninsured parents, caretakers and caretaker relatives and children not eligible under the provisions of N.J.A.C. 10:69, AFDC-Related Medicaid, and 10:79, NJ FamilyCare Children's *649 Program, as well as certain uninsured single individuals and couples without dependent children not eligible under the provisions of N.J.A.C. 10:90, Work First New Jersey Program.").
AFDC-related Medicaid benefits are available to applicants if they meet the gross income standards set out in N.J.A.C. 10:69-10.3(b). Under N.J.A.C. 10:69-10.13(b), a family with a gross income that exceeds these levels due to "earned income" can have an income disregard in an "amount equal to the difference between 133 percent of the Federal poverty level and the Income Standard established for the size of the family unit ...." (citations omitted).
Eligibility for parents and caretakers under N.J.A.C. 10:78, however, is as follows:
6. Parents, or caretakers, of dependent children under the age of 19 who meet the eligibility criteria contained in (a)6(i) through (iv) below and in this chapter, and who either were enrolled for benefits in the NJ FamilyCare Program on or after September 1, 2005, and continuously have received those benefits or have a pending application for such benefits that was received on or before February 28, 2010. The gross family income standards for eligibility of such individuals follows:
. . . .
iv. Effective September 1, 2008, and applying to NJ FamilyCare existing enrollments under this paragraph and applications received by February 28, 2010, parents or caretakers of dependent children under the age of 19 whose gross family income does not exceed 200 percent of the Federal Poverty Level;
[N.J.A.C. 10:78-3.4(a)(6).]
Appellants do not challenge the agency's action in closing the SCHIP to new applicants as of March 1, 2010. The program was closed in response to economic conditions and fiscal constraints that affected New Jersey and many other jurisdictions around the country. This policy was codified at N.J.A.C. 10:78-3.4(b), which provides:
For all enrollment applications received after February 28, 2010, all programs under this chapter are closed to any enrollments of, or benefits for, parents and caretakers whose benefits are not funded or payable under Title XIX of the Social Security Act, except as described in (b)1 below. Therefore, such applications for such persons will not be processed for enrollment. This exclusion from enrollment and benefits additionally applies to parents or caretakers who are applying to enroll after being terminated from enrollment in the NJ FamilyCare Program, including, but not limited to, individuals who have been terminated due to non-payment of premiums or other amounts due.
Appellants argue that the agency's interpretation that they became new applicants after being determined ineligible for AFDC-related Medicaid healthcare benefits (NJ FamilyCare-Plan A) is an erroneous interpretation of the regulations because they should have been automatically transferred into another NJ FamilyCare plan when their entitlement to participate in NJ FamilyCare-Plan A ended. We find no support for this equitable theory in either the statutes or regulations that govern NJ FamilyCare and its beneficiaries.
It is reasonably conceivable that appellants' receipt of AFDC-related Medicaid healthcare benefits were part of the same overall program (NJ FamilyCare) as that of the SCHIP benefits, and therefore they should be transferred from a non-qualifying *650 program into a qualifying program without being considered new applicants. However, the administrative framework treats AFDC-related Medicaid and SCHIP as two distinct programs, each with its own application and eligibility requirements. We cannot say that the agency's decision to treat former AFDC-related Medicaid beneficiaries as new applicants to the SCHIP was arbitrary or capricious, and there is no direct textual support for the concept of a transfer process.
Although the regulations use the term "NJ FamilyCare" loosely to refer to both an umbrella program as a whole, as well as the specific SCHIP, the two segments of NJ FamilyCare do not share funding sources, eligibility rules, or income standards. Moreover, the regulations governing each program's recertification process refer specifically to determining continuing eligibility for benefits under separate, specific chapters. See N.J.A.C. 10:69-5.2(a); N.J.A.C. 10:78-2.6(a). However, no regulation indicates that a beneficiary of one program is entitled to an automatic transfer to another program upon a change in circumstances.
The only relevant provision discussing what happens when a beneficiary is deemed ineligible for benefits is contained in N.J.A.C. 10:69-5.2(b), stating that "[a]ll cases determined ineligible for AFDC-[related] Medicaid shall be screened for eligibility under all other program options. Referrals shall be coordinated to ensure that continuous coverage of benefits is available to the beneficiary, as applicable."
This provision makes two points. First, a beneficiary is not automatically eligible for every healthcare benefits program under the NJ FamilyCare umbrella when the individual is admitted to one program. If that were the case, eligibility screenings and referrals would be largely unnecessary. Second, when appellants sought to be transferred from one "program option" (AFDC-related Medicaid) to another (SCHIP), the SCHIP no longer existed for them because of the March 1, 2010 closure directive.
We are not insensitive to the plight of appellants and recognize that they have proposed a workable interpretation of the applicable regulations. However, the appellate role does not allow us to invoke our notions of fairness, or substitute our version of wisdom for the agency's. Instead, under the gravitational pull of the agency's reasonable interpretation of its regulations, we are constrained to affirm the Director's determinations in all three cases.
Affirmed.
NOTES
[1] NJ FamilyCare is "is a federal and state funded health insurance program created to help New Jersey's uninsured children and certain low-income parents and guardians to have affordable health coverage." See http:// www.njfamilycare.org/pages/whatitis.html (last visited June 7, 2012).
[2] We examined the history of the directive and its chronological background in Guaman v. Velez, 421 N.J.Super. 239, 248-55, 23 A.3d 451 (App.Div.2011).
[3] The letter does not expressly state that R.H.'s and her daughter's healthcare benefits were being terminated, but indicated that only her son was eligible for continued benefits, thus implying that R.H. and her daughter were not.
[4] The briefs note that R.H. also received rental income, but during what time period and in what amount are unclear. However, the Division contends that R.H.'s receipt of unemployment benefits alone were sufficient to terminate her participation in NJ FamilyCare.
[5] C.B. contends that the start date was September 1, 2005. The ALJ also found September 1, 2005, to be the start date, but Director Harr found that the start date was March 2006. The difference in these dates is not germane to our determination.
[6] The benefits were reinstated because the initial termination did not provide proper notice. All outstanding medical bills were paid retroactively by Medicaid.
[7] This definitional regulation describes several sub-plans identified by alphabetical designations: NJ FamilyCare-Plan A; NJ FamilyCare-Plan B; NJ FamilyCare-Plan C; NJ FamilyCare-Plan D; NJ FamilyCare-Plan D for adults; and NJ FamilyCare-Plan I. N.J.A.C. 10:49-1.3.