# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0615-24

G.G.,

     Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF HUMAN SERVICES,

     Respondent-Respondent.

_____

Argued October 7, 2025 – Decided November 25, 2025

Before Judges Susswein and Chase.

On appeal from the New Jersey Department of Human Services, Division of Developmental Disabilities.

Jared B. Oberweis argued the cause for appellant (Hinkle Prior Fischer & Oberweis, attorneys; Jared B. Oberweis, on the briefs).

Laura N. Morson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Laura N. Morson, on the brief).

PER CURIAM

Petitioner G.G.[1] appeals the September 19, 2024 final agency decision of the Division of Developmental Disabilities (DDD) denying her an opportunity to administratively appeal a partner agency's removal of a two-way audio-video communications system in her private apartment, notwithstanding that the cameras were required pursuant to two Individual Service Plans (ISP)[2] authorized by DDD. After reviewing the record in light of the governing legal principles, we reverse the final agency decision and remand for DDD to hear petitioner's administrative appeal.

## I.

We discern the following pertinent facts and procedural history from the record. G.G. is a 40-year-old woman diagnosed with mild intellectual disability and unspecified pervasive development disorder. She resides in an apartment

---

[1] We use initials to maintain the confidentiality of these proceedings. R. 1:38(f).

[2] The ISP is a required planning document developed by DDD to organize and approve the services a person receives. It is prepared by a support coordinator with input from the individual and their family and is regularly updated as the individual's needs change. The ISP directs and prior authorizes all DDD services and service providers. See NJ Division of Developmental Disabilities, Supports Program and Community Care Program Policies and Procedures Manuals: A Quick Guide for Families (Mar. 2020). The ISP form lists the rights and responsibilities of an individual receiving supports and services through DDD, including "a fair hearing if for any reason . . . waiver services are denied, reduced, suspended [,] or terminated."

within a supervised housing community offering integrative housing services provided by the Jewish Family and Children's Service (JFCS), an agency of the Jewish Federation of Southern New Jersey (the Federation). JFCS provides services to residents pursuant to their ISPs approved by DDD. The DDD's Human Rights Committee (HRC) is an advisory body whose recommendations are intended to provide guidance to the agencies that partner with DDD.

G.G. was declared incapacitated by the Camden County Superior Court, and her father and brothers were appointed as her co-guardians. She utilizes a two-way audio-video communication system (the cameras) within her private apartment to facilitate check-ins with her guardians. Pursuant to her December 6, 2023 and August 4, 2024 ISPs, G.G.'s "apartment safety/security system must include [two]-way interactive video and audio with her guardians" for her daily support. (Emphasis added). On or about April 19, 2024, for reasons not stated in the record, the Federation decided that it would no longer permit G.G. to use the cameras in her apartment.

On June 6, 2024, the HRC held a teleconference to review the matter and offer a recommendation to the Federation. HRC recommended that cameras not be permitted in G.G.'s apartment. On July 18, 2024, G.G. sent a statement of disagreement with supporting documentation to the Chief Executive Officer of

3

the Federation. In a July 29, 2024 email, the Federation's Director of Special Needs stated that the HRC emphasizes a resident's right to privacy within their dwelling unit, and "having cameras inside the residence creates an unreasonable intrusion into [G.G.'s] expectation of privacy, and that of the other residents." The Federation, pursuant to the HRC's guidance, removed the cameras from G.G.'s apartment on August 5, 2024.

On August 22, 2024, G.G. submitted a Request for Appeal to the DDD Administrative Practice Office contesting the Federation's removal of the cameras and the HRC's recommendation. Eight days later, DDD responded that the issues presented are not appealable under N.J.A.C. 10:41A-4.1(b) and N.J.A.C. 10:48-1.1 because DDD was not involved in the dispute between the Federation and G.G. The Division advised, "[d]isagreements between service provider agencies and their clients should be resolved through the provider agency's grievance process." Additionally, DDD represented that HRC recommendations are not appealable pursuant to N.J.A.C. 10:48-1.6(f), and that appeal rights are limited to challenging an administrator's decision, not an HRC recommendation.

On September 17, 2024, G.G. sent a letter to the DDD Assistant Commissioner requesting that DDD consider her appeal pursuant to N.J.A.C.

10:41A and 10:48.  On September 19, 2024, the Assistant Commissioner responded, issuing a final agency decision upholding DDD's refusal to open an appeal.  The decision reiterated that, according to DDD, the appropriate appeals process was through the Federation's own grievance mechanism[3] as the dispute was between G.G. and the Federation.

This appeal follows.  G.G. raises two primary contentions for our consideration:  first, that DDD is required to allow an appeal pursuant to N.J.A.C. 10:41A-4.6(b) because G.G. submitted a written statement of disagreement and continues to disagree with the decision to remove the cameras from her unit; and second, that DDD is required to initiate an appeal under N.J.A.C. 10:48-1.6 because a DDD-licensed provider refuses to implement the supports outlined in her ISPs.

II.

The scope of our review is limited.  As a general matter, an agency decision will be upheld unless "'there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'"  Russo

---

[3]  We note that at the time this appeal was filed the Federation did not have its own internal grievance process.

A-0615-24

v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).  Our review is limited to determining:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Monmouth Cnty. Prosecutor's Off. v. Off. of Att'y Gen., Dep't of L. & Pub. Safety, 480 N.J. Super. 33, 40 (App. Div. 2024), cert. denied, 260 N.J. 449, 334 (2025) (quoting Lavezzi v. State, 219 N.J. 163, 171 (2014)).]

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field."  In re Herrmann, 192 N.J. at 28 (citations omitted).  "On the other hand, [appellate courts] are not bound by an agency's interpretation of a statute or its determination of a strictly legal issue."  In re Hearn, 417 N.J. Super. 289, 298 (App. Div. 2010) (citing In re Carter, 191 N.J. 474, 483, 924 (2007)).  "On such issues, our standard of review is plenary."  Ibid.

We stress that "[the appellate court's] review is not 'perfunctory,' nor is [the court's] 'function . . . merely [to] rubberstamp an agency's decision[.]'"  Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 239 (App. Div. 2019)

6

(omission in original) (second and third alteration in original) (quoting <u>Figueroa v. N.J. Dep't of Corr.</u>, 414 N.J. Super. 186, 191 (App. Div. 2010)). Rather, we are "constrained to engage in a 'careful and principled consideration of the agency record and findings.'" <u>Ibid.</u> (quoting <u>Williams v. Dep't of Corr.</u>, 330 N.J. Super. 197, 204 (App. Div. 2000)).

The New Jersey Administrative Code, Title 10, Chapter 41A is intended to "establish standards for the composition and operation of the Division of Developmental Disabilities' Human Rights Committees (HRC[s]), as well as those in agencies under contract with or regulated by the Division." N.J.A.C. 10:41A-1.1.

N.J.A.C. 10:41A-4.6, entitled "Dispute Resolution," provides:

> (a) Where the individual, guardian or advocate disagrees with the decision of the [a]dministrator, the individual, guardian or advocate may submit a written statement of disagreement. This statement of disagreement shall be sent, prior to the next HRC meeting, to the [a]dministrator for reconsideration and resolution. The [a]dministrator shall notify the chairperson of the HRC, in writing, of any disagreements and resolutions. This statement shall be maintained in the client record.
>
> (b) If the individual, or his or her guardian or advocate, continues to disagree with the decision of the [a]dministrator, the individual, or his or her guardian or advocate, may appeal the decision in accordance with N.J.A.C. 10:48–1.1.

A-0615-24

N.J.A.C. 10:48-1.6 describes the process of requesting an appeal to the DDD's Administrative Practice Office. It provides, "[a]ppeals of services shall be limited to those services indicated in the service plan or appropriate for inclusion in a service plan that were requested and denied." N.J.A.C. 10:48-1.6(d).

III.

We are satisfied that in the particular circumstances of this dispute, DDD is required to allow an appeal pursuant to N.J.A.C. 10:41A-4.6(b). G.G. followed the prescribed procedure for initiating an administrative appeal by submitting a written statement of disagreement to the CEO of the Federation. She still disagrees with the Federation's decision, which she "may appeal" in accordance with N.J.A.C. 10:48–1.1.

Additionally, N.J.A.C. 10:48-1.6 allows appeals with respect to services included in the service plan when such services are denied. N.J.A.C. 10:48-1.6(d). We interpret the administrative code to authorize an appeal when, as in this case, the petitioner was denied services that were included in an ISP approved by DDD. It bears emphasis that DDD's Community Care Program Manual (CCP Manual) explicitly requires service providers to "[p]rovide services and supports within the parameters indicated in the ISP." NJ Division

8

of Developmental Disabilities, <u>Community Care Program Policies & Procedures Manual</u> (Sept. 2025). Here, the cameras were <u>mandated</u> by G.G.'s December 6, 2023 and August 4, 2024 ISPs.

In the specific circumstances of this case, we are unpersuaded by DDD's contention at oral argument that it has no oversight over the Federation's decision—despite the fact that the Federation is a contracted license-provider agency. That position is inconsistent with the CCP Manual. We are satisfied in these distinctive circumstances that DDD exercises some oversight over the actions taken by the service providers it contracts with, holding them responsible for fulfilling their obligation to "provide services and supports within the parameters indicated in the ISP." <u>Ibid.</u>

We add that while the HRC issues only advice and recommendations, not binding decisions, it was established by regulation and operates under the auspices of the DDD. <u>See</u> N.J.A.C. 10:41A-1.1. We are concerned that the HRC advised a service provider to discontinue a safety and security service expressly required by DDD-approved ISPs.[4] In these circumstances, the HRC's

---

[4] The HRC recommendation notes that the Federation "explained that the continuous support from the family hinders staff involvement and that [G.G.] may require a higher level of supervision than what is documented in her service plan." Had the Federation sought a revision of the ISP to address its concerns,

recommendation, which was relied upon by the service provider, is a dispute appropriately within the scope of DDD's review as part of its responsibility to protect the safety and well-being of the persons for whom it has approved an ISP.

For the foregoing reasons, we reverse the final agency decision and remand for DDD to hear the administrative appeal. We offer no opinion on the outcome of that appeal except to note with respect to the privacy concerns expressed by the HRC that the two-way cameras in question operate solely within the confines of G.G.'s own apartment. As shown by this appeal, G.G.'s duly appointed co-guardians have consented to any intrusion upon her own privacy rights that might arise from the presence of the cameras.[5] We offer no opinion on whether the privacy rights of other persons who might enter G.G.'s apartment might outweigh the need for two-way cameras to protect her safety

---

any such modification would entail DDD approval, and such approval would without question be an agency action subject to administrative appeal. Here, it appears that rather than seek a revision to the ISP, the Federation enlisted the support of DDD's HRC to justify noncompliance with the existing ISP.

[5] Moreover, DDD HRC's recommendation explicitly found that G.G. "replied 'yes' that she likes having the cameras in her apartment and receiving supports from her family."

A-0615-24

and security—a need DDD recognized by approving the ISPs. We leave any such argument to be addressed by DDD in the administrative appeal.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0615-24