NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

───────────────

Nos. 17-3531 & 17-3633

───────────────

GEORGE H. WILLEKES; MARK R. WILLEKES;
ROBERT P. WILLEKES,

Appellants in No. 17-3531

v.

THE SERENGETI TRADING COMPANY;
SLOAT BROS, LTD, d/b/a THE ANNEX; GEORGE R. GUTHRIE; GROUP G, LLC.,

Appellants in No. 17-3633

───────────────

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-13-cv-07498)
District Judge: Hon. Esther P. Salas

───────────────

Submitted Under Third Circuit L.A.R. 34.1(a)
May 23, 2019

Before: MCKEE, SHWARTZ, and FUENTES, Circuit Judges

(Opinion filed:  July 25, 2019)

───────────────

OPINION[*]

───────────────

FUENTES, Circuit Judge

─────────────────────

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

These appeals arise from the District Court's dismissal of a suit filed by appellants George, Mark, and Robert Willekes, shareholders of European Coffee B.V. (the "Coffee Group"). This suit was filed against Sloat Bros. Ltd, a warehouse owner; Serengeti Trading Co., a coffee purchaser; and Group G, LLC and George Guthrie, a coffee broker and its owner (collectively, "Defendants"), for allegedly aiding and abetting the fraudulent transfer of several hundred thousand pounds of coffee by the Willekeses' former business partner, Clemens Calis, who is not a party to this suit. Because we conclude that the Willekeses do not have standing as shareholders to pursue harms suffered by their corporation, we will vacate in part and remand with directions to dismiss without prejudice those claims for which the Willekeses lack standing. We will affirm the dismissal of their remaining claims with prejudice.

## I.     Background[1]

As noted above, this suit stems from the fraudulent transfer of coffee by the Willekeses' business partner, Clemens Calis. The Willekeses and Calis were shareholders and officers of the Coffee Group. In 2010, the Coffee Group filed suit in New Jersey state court at Calis's direction, alleging that Calis had acquired the Willekeses' shares in the Coffee Group for one euro. The Willekeses filed a "Civil RICO counterclaim" against Calis individually.[2] While the state litigation was pending, Calis attempted to transfer $600,000 in cash from the Coffee Group's funds and $2.8 million worth of its coffee, then located at a warehouse operated by Sloat Bros. Ltd. The

---

[1] We assume all well-pled allegations in the Third Amended Complaint are true.
[2] A110, 113.

Willekeses prevented the transfer of the coffee by sending Sloat a cease and desist letter, threatening to sue if it transferred the coffee to Calis. Sloat promised in a letter from its attorney that it would not transfer the coffee "under the circumstances."[3]

In November 2011, the judge in the state litigation ordered that the Coffee Group, at Calis's direction, sell $2.85 million in uninsured coffee inventory and the funds be placed in a trust. The coffee was sold to Serengeti Trading Co. in a deal brokered by George Guthrie and Group G, LLC and released by Sloat from its warehouse. Despite the court's order, Serengeti deposited $1.4 million in Calis's personal account, not a trust. Although the Willekeses eventually prevailed in the state suit against Calis, he is "now an international Fugitive from Justice," and they have been unable to collect the state court's $4.92 million judgment against him.[4]

The Willekeses subsequently filed this suit and were permitted to thrice amend their complaint. The Third Amended Complaint ("Complaint") alleges claims for negligence, equitable estoppel, aiding and abetting Calis's breach of fiduciary duty, and unjust enrichment against Defendants. The District Court dismissed the Complaint in its entirety with prejudice, reasoning that the Willekeses had failed to plead knowledge on the part of Defendants. The District Court also denied Defendants' Motion for Sanctions. The Willekeses appealed and Defendants filed a cross appeal.

## II.    Discussion[5]

---

[3] A148.

[4] A141.

[5] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. Defendants argue that the Willekeses lack standing under

3

As we will explain: (1) the Willekeses lack shareholder standing to pursue the harm alleged in their counts for negligence and unjust enrichment[6]; (2) the Willekeses fail to state a claim for the remaining counts of their Third Amended Complaint[7]; and (3) the District Court did not abuse its discretion in denying the Motion for Sanctions.

### A. The Willekeses Lack Shareholder Standing for Certain Counts of the Third Amended Complaint

Defendants argue the Willekeses lack standing to pursue their claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). An attack on standing under Rule 12(b)(1) prior to the filing of an answer is a "facial attack" and is considered under the same standard as a motion under Rule 12(b)(6).[8] Under Rule 12(b)(6), a court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the nonmoving party[9] to "determine whether they plausibly give rise to an

---

Article III and that we therefore lack jurisdiction. That argument, however, is unavailing; the Willekeses have pled an actual injury, traceable to defendants, that a court may redress. *See Franchise Tax Bd. v. Alcan Aluminium*, 493 U.S. 331, 335 (1990).

[6] Counts 2, 4, 5, 8, 9, 11 of the Third Amended Complaint. Although Defendants argue shareholder standing primarily with respect to the Second Amended Complaint, they also raised the issue with respect to the Third Amended Complaint. To avoid remanding both complaints to the District Court, we limit our discussion to the Third Amended Complaint and do not reach Defendants' arguments regarding the Second Amended Complaint or the District Court's order entered September 22, 2016.

[7] Counts 1, 3, 7, 10 of the Complaint.

[8] *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Because the standards are the same, we do not decide which Rule is applicable to a challenge to prudential standing such as shareholder standing. *Cf. Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 104 (3d Cir. 2015).

[9] *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

4

entitlement to relief."[10]  However, allegations that "are no more than [legal] conclusions[] are not entitled to the assumption of truth."[11]

We conclude that the Willekeses lack standing as shareholders to file suit for harms sustained by the Coffee Group.  The Supreme Court has held that "standing" is composed of "two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations."[12]  Prudential standing prohibits a plaintiff from asserting "the legal rights or interests of third parties"[13]; in shareholder suits, that prohibition precludes "shareholders from initiating actions to enforce the rights of the corporation."[14]  Thus, "a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation."[15]  However, a shareholder may have standing "to recover for injuries that were inflicted on him individually rather than on the corporation."[16]  This rule is built on "the fundamental tenet of corporation law which treats the corporate body as an entity—indeed, as a person—separate and distinct from those who own shares of its stock."[17]

Here, the Willekeses have not alleged an individual, personal harm in their counts for negligence and unjust enrichment for two reasons.  First, the state court's November

---

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[11] *Id.*

[12] *Alcan*, 493 U.S. at 335 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[13] *Id.* at 336 (quoting *Warth*, 422 U.S. at 499).

[14] *Id.* (citing *Alcan Aluminium v. Franchise Tax Bd.*, 860 F.2d 688, 693 (7th Cir. 1988)).

[15] *Kaplan v. First Options (In re Kaplan)*, 143 F.3d 807, 811–12 (3d Cir. 1998); *accord Pepe v. Gen. Motors Acceptance Corp.*, 604 A.2d 194, 196 (N.J. Super. Ct. App. Div. 1992).

[16] *Kaplan*, 143 F.3d at 812.

[17] *Kauffman v. Dreyfus Fund, Inc.*, 434 F. 2d 727, 733 (3d Cir. 1970).

5

2011 Order for the sale of the coffee clearly shows the coffee belonged, not to the Willekeses, but to the Coffee Group. Second, the Complaint explicitly refers to the Coffee Group as the "Title Owner of the coffee."[18] Thus, the injury in the fraudulent sale of coffee was sustained by the Coffee Group, and the Willekeses do not have shareholder standing to pursue a suit in their own name, as opposed to that of the Coffee Group, in their counts for negligence and unjust enrichment. As a result, we will vacate the order dismissing those claims with prejudice and remand with direction that the District Court dismiss the claims without prejudice.[19]

On the other hand, the Willekeses have sufficiently alleged a personal harm in their counts for aiding and abetting and equitable estoppel and have standing to pursue those claims. The aiding and abetting claims assert that Defendants facilitated Calis's breach of his fiduciary duty when he absconded with the proceeds of the coffee sale in violation of the November 2011 state court order. The order directed the Coffee Group, by and through Calis, to sell coffee and provide updates to the Willekeses. Therefore, to the extent that Calis breached a fiduciary duty[20] under the November 2011 court order and Defendants aided that breach, the duty was owed to the Willekeses individually, as parties to the state court litigation. The equitable estoppel claim asserts that the

---

[18] A137; *see also* A134.

[19] *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003) ("The prudential reasons alone provide adequate basis to affirm the order dismissing . . . without prejudice.").

[20] The duty here would be Calis's obligation to comply with the terms of the November 2011 court order, directing him to confirm the sale with the court and the Willekeses and to deposit the net proceeds in the trust account. We decline to decide whether this duty arises from Calis's role as a fiduciary.

Willekeses declined to sue Sloat, relying on representations Sloat's attorney made promising not to transfer the coffee to Calis. We believe that the Willekeses have sufficiently alleged that this was an injury that may have harmed them personally.

Accordingly, the District Court properly held that the Willekeses have standing to sue on their aiding and abetting and equitable estoppel claims, and we next examine whether the Court properly dismissed those claims under Federal Rule 12(b)(6).

**B.      The District Court Properly Concluded that the Willekeses Fail to State a Claim for Aiding and Abetting and Equitable Estoppel.**

In the alternative, Defendants argue that those remaining claims should be dismissed under Rule 12(b)(6).[21] We agree with Defendants with respect to this issue.

In Counts 1, 7, and 10 of the Third Amended Complaint, the Willekeses plead that Defendants aided and abetted Calis's breach of his fiduciary duty to turn over the net proceeds of the sale to the trust account when he had the money sent to his personal account. Under New Jersey law, "[t]he elements of aiding and abetting are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing."[22] "A claim for aiding and abetting fraud also requires proof of the underlying tort[.]"[23]

---

[21] Our review is plenary, and as noted above, we disregard the pleading's "legal conclusions" but "assume all remaining factual allegations to be true," which we construe in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2, 790 (3d Cir. 2016).

[22] *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003); *see also State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.,* 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006).

[23] *Qwest Commc'ns Int'l, Inc.*, 904 A.2d at 784.

Assuming, as the District Court did, that Calis breached a fiduciary duty created by the November 2011 order, the Willekeses have not pled that Defendants had the requisite knowledge or knowing participation to have aided and abetted a breach of that duty. The Willekeses assert, and attach documents suggesting, Defendants were aware of an ownership dispute between Calis and the Willekeses. That knowledge, however, does not constitute knowledge that Calis would abscond with the funds of the sale in violation of his duties under the order, let alone knowing participation in and facilitation of that breach. Although Serengeti deposited the funds in Calis's personal account, the order did not obligate it to deposit the funds in the special master trust account—it simply directed that the net proceeds of the sale "shall until further Order of the Court be distributed" to the trust account,[24] so it is reasonable to infer that Serengeti expected Calis to transfer the funds to the trust account.[25] Nothing in the pleading provides a basis to dispel this inference.

In Count 3, the Willekeses allege a claim of equitable estoppel against Sloat. They plead that the letter they received from Sloat's attorney in response to their cease and desist letter induced them not to join Sloat as a party in the state court action. "[T]o establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment."[26]

---

[24] A187.
[25] *See* Sloat Br. at 12 ("[N]othing in the State Court Order precluded the funds from being transferred to Calis'[s] account and, thereafter, to the Trust Account.").
[26] *Knorr v. Smeal*, 836 A.2d 794, 799 (N.J. 2003).

8

While the Willekeses' cease and desist letter threatened Sloat with litigation if it released the coffee,[27] and we assume that the letter the Willekeses received from Sloat's attorney caused the Willekeses not to sue Sloat, the Willekeses have not pled any facts to conclude that Sloat sent the letter to induce the Willekeses to not bring them into the state suit. Moreover, the doctrine of equitable estoppel "is only applied in compelling circumstances where the interests of justice, morality and common fairness dictate."[28] The pleadings provide no basis for concluding that equitable estoppel should apply here.

The District Court properly dismissed the Willekeses' claims for their aiding and abetting and equitable estoppel.[29]

## C. The District Court Did Not Abuse Its Discretion in Denying Sanctions

Next, Defendants challenge the District Court's denial of economic sanctions under Federal Rule of Civil Procedure 11. Under Rule 11, any "pleading, written motion, or other paper" presented to the court by an attorney certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law" and that "the factual contentions

---

[27] A149 ("If we do not hear from you by 12:45pmPT, we will have no choice that to file a lawsuit in Superior Court . . . . To avoid that unnecessary emergent litigation, please confirm in writing . . . .").
[28] *First Union Nat'l Bank v. Nelkin*, 808 A.2d 856, 862 (N.J. Super. Ct. App. Div. 2002).
[29] The District Court also properly dismissed the Willekeses' failure to mitigate claim in Count 6 of the Complaint, as this is not a freestanding cause of action under New Jersey law, but rather is an affirmative defense. *See O'Lone v. Dep't of Human Servs.*, 814 A.2d 665, 671 (N.J. Super. Ct. App. Div. 2003).

have evidentiary support."[30]   The District Court's denial of a motion for sanctions is reviewed for abuse of discretion.[31]

The District Court did not abuse its discretion in denying the Motion for Sanctions.  The District Court stated, "[I]t's very clear this is not an action that rises to a level, under Rule 11, for economic sanctions."[32]  Explaining its reasoning, the Court stated it "invite[d] plaintiffs' counsel to look at and to reassess whether claims could [be] brought.  And with that, counsel did, I believe, arguably raise[] those claims that he felt he could raise as a matter of fact and as a matter of course."[33]  The District Court concluded the Complaint sufficiently differed from previous versions to avoid sanctions. We cannot say the District Court's conclusion was "contrary to reason or without a reasonable basis in law and fact."[34]

## III.    Conclusion

For the foregoing reasons, we will affirm in part, vacate in part, and remand with direction to dismiss without prejudice those claims for which the Willekeses lack standing.  The District Court's order denying the motion for sanctions is affirmed.

---

[30] Fed. R. Civ. P. 11(b)(2)–(3).
[31] *Simmerman v. Corino*, 27 F.3d 58, 61 (3d Cir. 1994).
[32] A479.
[33] A480–81.
[34] *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 390 (3d Cir. 2016) (citations and internal quotations omitted).